### PEOPLE v. TRUDELL.

1. INTOXICATING LIQUORS—CONFLICT OF LAWS—CRIMINAL LAW—STATE ACT NOT SUPERSEDED BY VOLSTEAD ACT.

   The State prohibition act (Act No. 338, Pub. Acts 1917, as amended), has not been superseded by the national prohibition act, known as the Volstead Act, passed under the 18th Amendment of the Constitution of the United States.

2. CRIMINAL LAW—EVIDENCE OF OTHER OFFENSES—INTENT.

   Upon a trial for felony, evidence of other distinct offenses will not be admitted unless the question of intent is involved.

3. INTOXICATING LIQUORS—CRIMINAL LAW—RULE OF EVIDENCE—OTHER OFFENSES.

   Section 54 of the prohibition act (Act No. 338, Pub. Acts 1917) providing that in prosecutions for its violation, "evidence of other sales or gifts of intoxicating liquor at or about the same time by the same person shall be admissible as tending to show the character of the business in which the defendant is engaged," etc., changes a well-established rule of evidence, and trial courts should always require a preliminary showing as to time before receiving testimony of other sales.

As to the effect of Federal, constitutional, or legislative provisions, as to intoxicating liquors, on State legislation, see notes in 10 A. L. R. 1587, 11 A. L. R. 1320.

4. SAME—EVIDENCE PRESUMED COMPETENT.

> Where two witnesses testified as to other sales without undertaking to fix the time, the Supreme Court will presume said testimony to be competent under said statute, in the absence of a different showing on the face of the record.

5. CONSTITUTIONAL LAW — INTOXICATING LIQUORS — STATUTES — TITLE OF ACT.

> Section 54 of Act No. 338, Pub. Acts 1917, is not unconstitutional as contravening section 21, Art. 5, of the Constitution, requiring the object of an act to be expressed in its title.

6. SAME—GERMANE PROVISIONS NEED NOT BE REFERRED TO IN TITLE.

> The provisions of said section 54, being germane to the general purpose of the act, need not be directly referred to in the title.

7. INTOXICATING LIQUORS—CRIMINAL LAW—TRIAL — INSTRUCTIONS —"REASONABLE DOUBT."

> In view of the instructions given, and the questionable value of a definition of "reasonable doubt," *held*, not error to refuse an instruction defining reasonable doubt, although in the instant case the request might well have been given as presented.

8. SAME—INSTRUCTIONS AS TO WEIGHT OF DEFENDANT'S TESTIMONY —REQUESTED INSTRUCTION.

> There was no error in refusing a requested instruction as to the weight to be given defendant's testimony in her own behalf, where it was fairly covered in' the general charge.

Error to Bay; Houghton (Samuel G.), J. Submitted June 15, 1922. (Docket No. 87.) Decided October 2, 1922.

Lenore Trudell was convicted of violating the liquor law, and sentenced to imprisonment for 6 months in the Detroit house of correction. Affirmed.

*Coumans & Gaffney*, for appellant.

*Merlin Wiley*, Attorney General, and *Gilbert W. Hand*, Prosecuting Attorney, for the people.

MCDONALD, J.   The defendant was informed against in the Bay circuit court for having sold a half pint of gin on August 6, 1921, at Bay City, in violation of the provisions of Act No. 338 of the Public Acts of 1917, as amended.   Lenore Trudell and her husband conducted a soft drink parlor, grocery store and hotel in the city of Bay City.   The complaining witness is one Anthony Linda, who with four companions visited defendant's place of business on the night of August 6, 1921, and it is claimed that while there they drank a quantity of intoxicating liquor, and that Linda bought a bottle of gin, which he took away with him. When the testimony was concluded counsel for the defendant made a motion, which the court refused, that he direct a verdict of not guilty on the grounds that Act No. 338 of the Public Acts of 1917, as amended, under which the information was laid, has been superseded by the national prohibition act, known as the Volstead act, passed under the 18th Amendment of the Constitution of the United States.

This question is disposed of adversely to defendant by the United States Supreme Court in *Vigliotti* v. *Pennsylvania*, U. S. Adv. Ops. 1921-22, 389 (42 Sup. Ct. 330).

Vigliotti was convicted under an information charging him with a violation of the liquor license law of the State of Pennsylvania enacted in 1887.   In discussing his contention that the Volstead act was the only law applicable to sales of intoxicating liquors, the court said:

"The question presented for our decision, is whether the provision of the Brooks law (the 1887 liquor license law of Pennsylvania), here applied, had been superseded by the 18th Amendment and the Volstead act (41 U. S. Stat. p. 305).   *   *   *   The Brooks law, as thus construed, does not purport to authorize or sanction anything which the 18th Amendment or the Volstead act prohibits, and there is nothing in it which

conflicts with any provision of either. It is merely an additional instrument which the State supplies in the effort to make prohibition effective. That the State may, by appropriate legislation, exercise its police power to that end, was expressly provided in section 2 of the amendment which declares that 'Congress and the several States shall have concurrent power to enforce this article by appropriate legislation.' National prohibition cases (*Rhode Island* v. *Palmer,* 253 U. S. 350, 387 [40 Sup. Ct. 486, 588]). That the Brooks law, as construed, is appropriate legislation, is likewise clear. To prohibit every sale of spirituous liquors except by licensed persons may certainly aid in preventing sales for beverage purposes of liquor containing as much as one-half of one per cent. of alcohol; and that is what the Volstead act provides. If the Brooks law, as construed, had been enacted the day after the adoption of the amendment, it would obviously have been 'appropriate legislation.' It is not less so because it was already in existence."

The main question presented by the assignments of error is that the court erred in admitting evidence of prior sales of liquor by the defendant. It has long been the rule in this State that upon a trial for felony evidence of other distinct offenses will not be permitted unless the question of intent is involved. The general rule and its exceptions are discussed by Mr. Justice FELLOWS in *People* v. *Rice,* 206 Mich. 650, and in *People* v. *Rajona,* 208 Mich. 633.

In the instant case there is no question of intent, and therefore evidence of other sales was not admissible unless it could be received under section 54 of the prohibition act, which reads as follows:

"In all prosecutions for selling or furnishing intoxicating liquors, a delivery thereof shall be *prima facie* evidence of such selling or furnishing, and in any such prosecution evidence of other sales or gifts of intoxicating liquor at or about the same time by the same person, or at the same place to other persons, shall be admissible as tending to show the character of the business in which the defendant is engaged and the

probability or credibility of such testimony as may be introduced of the particular sale or sales upon which the State shall rely for conviction."

This statute changes a well established rule of evidence and trial courts should always require a preliminary showing as to time before receiving testimony of other sales. The two witnesses who testified to other sales did not undertake to fix the time. They were not asked to do so. Counsel for defendant made the general objection that the testimony was "incompetent, immaterial and irrelevant," but made no reference to the lack of showing as to time. For aught the record shows, the other sales testified to were at or about the same time of the sale charged in the information. This court cannot presume that they were not. On the contrary, the testimony is presumed to be competent unless it otherwise appears on the face of the record, and as it does not so appear, it must be held to be admissible under section 54 of the statute.

But counsel for the defendant urge that section 54 is unconstitutional, its object not being expressed in the title as required by section 21 of article 5 of the Constitution of 1908.

The title to the act as amended by Act No. 53, Pub. Acts 1919, is as follows:

"An act to prohibit the manufacture, sale, keeping for sale, giving away, bartering, furnishing, possessing, importing, or transporting of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, except for medicinal, mechanical, chemical, scientific and sacramental purposes; to regulate the manufacture, sale, possession, importation and transportation thereof for such excepted purposes; to provide for the enforcement of, and to prescribe penalties for violations of this act; to prohibit certain advertising and advertisements pertaining to the liquor traffic; to prescribe the duties of officers, and of carriers pertaining to the liquor traffic, to prescribe rights of

action, recovery of damages and rules of evidence thereunder; and to repeal all acts in conflict therewith."

Counsel say that the words, "prescribed rules of evidence thereunder" refer to rights of action and recovery of damages and not to criminal cases arising out of the enforcement of the law. They are clearly wrong. The best evidence of the intention of the legislature as to the application of this language in the title is found in the fact that in section 54 it did prescribe rules of evidence for criminal prosecutions, and nowhere changed the rules in civil actions for damages. We think the subject of the section is clearly indicated in the language of the title, and therefore fully meets the constitutional requirement. But, if it were not so indicated, the provisions of the section in question are germane to the general purpose of the act, and therefore need not be directly referred to in the title. (Read *Loomis* v. *Rogers,* 197 Mich. 271, and *Fortin* v. *Electric Co.,* 154 Mich. 316.)

Counsel further urge that the court erred in refusing the following request to charge:

"A reasonable doubt as to the guilt of the accused is one as to the whole of the evidence and not as to any particular fact, arising from a candid and impartial investigation of all of the evidence and such as in the graver transactions of life would cause a reasonably prudent man to hesitate and pause."

While this definition is not as complete and satisfactory as that approved by this court in *People* v. *Finley,* 38 Mich. 482, we think it might rightfully have been given, but are not disposed to disturb the verdict because it was not. In his general charge, so far as the court made reference to "reasonable doubt," he said nothing inaccurate or misleading. It is not a case where the trial judge gave a wrong and harmful definition of the term, but where he did not give

any.    In *People* v. *Stubenvoll*, 62 Mich. 329, Justice
CHAMPLIN, speaking for the court, said:

"We do not think that the phrase 'reasonable doubt'
is of such unknown or uncommon signification that an
exposition by a trial judge is called for.    Language
that is within the comprehension of persons of ordi-
nary intelligence can seldom be made plainer by
further definition or refining.    All persons who possess
the qualifications of jurors know that a 'doubt' is a
fluctuation or uncertainty of mind arising from defect
of knowledge or of evidence, and that a doubt of the
guilt of the accused, honestly entertained, is a 'reason-
able doubt.' "

In *Hamilton* v. *People*, 29 Mich. 173, speaking on
this subject, Mr. Justice CAMPBELL said:

"But we do not think that juries can derive any help
from attempts by numerous and complicated requests
to explain what would be very much plainer without
them.    If a jury cannot understand their duty when
told they must not convict when they have a reason-
able doubt of the person's guilt, or of any fact essential
to prove it, they can very seldom get any help from
such subtleties as require a trained mind to dis-
tinguish.    Jurors are presumed to have common sense
and to understand common English.    But they are
not presumed to have professional, or any high degree
of technical or linguistic training."

In *People* v. *Cox*, 70 Mich. 247, Mr. Justice MORSE
said:

"It is not easy to define a 'reasonable doubt.'    In
most cases it is as well, if not better, to leave it un-
defined save as the words themselves carry their own
definition."

In the instant case, the jury was told that defendant
was entitled to the presumption of innocence until
it was overcome by competent evidence which satisfied
their minds beyond a reasonable doubt of her guilt,
that they must not convict unless each juror was
convinced beyond a reasonable doubt, and that where

two conclusions can be drawn, one tending to establish guilt and the other tending to establish innocence, it was their duty to accept the conclusion tending towards innocence and acquit the defendant. In view of these instructions and the questionable value of a definition of "reasonable doubt," we believe that the court did not err in failing to give the request presented by counsel.

Error is also assigned because the court refused to give the following request:

"In this case the defendant has taken the stand in her own behalf, and I charge you that her testimony is to be tested the same as that of any other witness, and if rational, natural and consistent, it may outweigh the testimony of all other witnesses."

This request also might well have been given as presented, but, as the court fairly covered it in his general charge, we think there was no error in refusing it.

We have carefully examined this record and find no reversible error.

The conviction is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.