PEOPLE v CHAPLIN

Docket No. 66156. Decided December 21, 1981. On application by the defendant for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the defendant's convictions and remanded the case for a new trial.

Howard B. Chaplin was charged with assault with intent to rob while armed and with larceny of more than $100. He was convicted by a jury in the Ingham Circuit Court, Robert Holmes Bell, J., of the assault charge, and convicted by the trial court of a supplemental charge of being a third-felony offender. Lindy Ellis, the defendant's girlfriend, testified to support the defense theory that the defendant lacked the specific intent necessary to support a conviction of assault with intent to rob while armed. She was cross-examined by the prosecutor about her activities as a prostitute, and the prosecutor argued to the jury that she could not be believed because of her bad moral character as a prostitute and because she would sell her body to raise money for the defendant. The Court of Appeals, T. M. Burns, P.J., and Beasley and Deneweth, JJ., affirmed (Docket No. 47218). The defendant applies for leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

1. It is improper to impeach the credibility of a witness by demonstrating on cross-examination that the witness has a bad general moral character. Evidence of character offered to impeach or support a witness's credibility, other than evidence of prior conviction of a crime, must be limited to the particular trait of truthfulness.

2. To demonstrate that a witness is a prostitute is not to show that she has the character trait of untruthfulness. In this case it is apparent that the prosecutor was attempting to impeach the credibility of Lindy Ellis by establishing her bad moral character because of her prostitution and showing that she was biased in favor of the defendant for whom she would sell her body. If the prosecutor desired to show bias, it would have been sufficient to elicit an admission from the witness that she had posted the money to secure the defendant's release on bail. Instead, the prosecutor chose to emphasize her

prostitution and thereby necessarily suggested to the jury that the defendant was of bad character because he was closely associated with a prostitute and may have been her pimp. Permitting this line of cross-examination was error. The evidence was not admissible under the rules of evidence as impeachment of credibility because the conduct was not related to truthfulness, and insofar as it was relevant to show bias it should have been excluded because the danger of unfair prejudice substantially outweighed its probative value.

The defendant's convictions are reversed, and the case is remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Charles M. Sibert,* Chief Appellate Attorney, and *Janis L. Blough,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek,* Assistant Defender) for defendant.

PER CURIAM. The issue presented in this case is whether the prosecutor's cross-examination of a key defense witness with regard to her activities as a prostitute was improper and so prejudicial as to warrant a reversal of the defendant's convictions.

I

The defendant was charged with assault with intent to rob while armed[1] and with larceny of more than $100.[2] In addition, a supplemental information was filed charging that a conviction of either offense would be a third-felony conviction.[3]

The defendant was tried before a jury on the assault and larceny charges. The jury convicted

[1] MCL 750.89; MSA 28.284.
[2] MCL 750.356; MSA 28.588.
[3] MCL 769.11; MSA 28.1083.

him of assault but acquitted him of larceny. Thereafter he was bench-tried on the supplemental information and was found guilty of being a third-felony offender. He was sentenced to a prison term of 20 to 30 years.

The Court of Appeals affirmed. 102 Mich App 748; 302 NW2d 569 (1980).

## II

The evidence adduced at trial established that in the early morning hours of March 5, 1979 the defendant and his girlfriend, Lindy Ellis, were driven to the home of Lynelle Ellis, the grandmother of Lindy Ellis. The defendant went into the house while Lindy Ellis went to a store.

Tim Gordon, a youth who was residing at the home of Mrs. Ellis, responded to a knock on the door by the defendant. Tim knew the defendant and let him in. After a short conversation, Tim turned to walk to the kitchen to get the defendant something to drink. The defendant grabbed him from behind and began choking him. He demanded to know where the gun and valuables were. Tim told the defendant that there was no gun and that Mrs. Ellis kept her purse behind the door of her room. The defendant cut Tim on the neck with a knife. The defendant went upstairs and Tim fled. Over $1000 was subsequently missing from the purse of Mrs. Ellis.

Although the defendant did not testify, it was his theory of defense that he had involuntarily consumed LSD on the date in question and that this consumption had so disturbed his judgment that he lacked the specific intent necessary to support a conviction of assault with intent to rob while armed.

Lindy Ellis testified in support of the defense theory. She stated that shortly before the events in question occurred she was drinking beer with the defendant. Without the defendant's knowledge she put three LSD tablets in his drink in order to "turn him on".

### III

During the cross-examination of Lindy Ellis by the prosecutor, the following colloquy took place:

"*Q.* You had occasion this year to post bail for Mr. Chaplin, didn't you?

"*A.* Yes.

"*Q.* And, where did you get the money from that you posted bail for him?

"*A.* From my clientele.

"*Q.* From your clientele. Well, what business are you in?

"*A.* Prostitution.

"*Q.* You are a prostitute?

"*A.* Yeah.

"*Q.* Is that right?

"*A.* That's right.

"*Q.* And, the money you got from what's called working the street, selling your body, that's where you got the money?

"*A.* That's right.

"*Q.* Did Chaplin ever get any of the money from you selling your body? I mean, from besides posting bail for him, did you ever give him any of the money that you earned from selling your body to—

"*[Defense Counsel] (Interposing):* Your Honor, I believe we are getting now into really an immaterial area.

"*The Court:* Would counsel approach the bench.
*(Bench conference.)*

"*Q. (By [Assistant Prosecuting Attorney]):* Have you ever given the defendant any of the money that you earned as a result of selling your body?

*"[Defense Counsel]:* Your Honor, I had an objection to that.

*"The Court:* Overruled. We'll take the answer.

*"Q. (By [Assistant Prosecuting Attorney]):* Have you?

*"A.* Sometimes.

*"Q.* Did you work for him? Was he your pimp? You know what a pimp is?

*"A.* No, that's out. That term is out or my idea is— there is no—no, he is not my pimp.

*"Q.* But you did, in fact, turn over so much of your earnings to him, correct?

*"A.* No.

*"Q.* You would sell your body on the street though to help out the defendant, right?

*"A.* (No response.)

*"Q.* Isn't that right?

*"A.* In need sometimes.

*"Q.* Pardon?

*"A.* Sometimes.

*"Q.* But, you would sell your body to help him, wouldn't you and didn't you?

*"A.* Help him get out of jail.

\* \* \*

*"Q.* But, everything you have told the jury and the judge and everybody is the truth today, right?

*"A.* That's right.

*"Q.* You'd sell your body on the street for him but you won't lie for him, right?

*"A.* No need to lie."

The prosecutor further alluded to the activities of Lindy Ellis as a prostitute in his closing argument.[4]

---

[4] For example:

"Now, because poor Mr. Chaplin took this LSD, are you going to believe her? Are you going to believe her at all? She stands—sits on the witness stand and says she'd sell her body for the man. 'I work the streets for him.' And, you think she won't, she won't sell her body? But, you think she won't come in here and lie about this incident?

\* \* \*

IV

The defendant contends, *inter alia,* that it was error for the prosecutor to cross-examine Lindy Ellis about her status as a prostitute. He argues that her actions in this regard had no bearing on her truthfulness as a witness and thus questions regarding those actions were not proper for impeachment purposes.

As we said in *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977), it is improper to impeach the credibility of a witness by demonstrating on cross-examination that the witness has a bad general character in terms of morality. There we held improper the cross-examination of the defendant and his wife concerning the fact that their four children were all born prior to their marriage. We stated:

"We hold, therefore, that character evidence offered to impeach or support a witness's credibility, other than evidence of prior conviction for crime, must be limited to the particular trait of truthfulness or untruthfulness." 400 Mich 253, 268.

MRE 608 provides:

"(a) Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence of reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or

"No, what we have is a very thinking cunning, despicable person right here, the wolf in sheep's clothing. That is what we have. We have got a guy who along with his girlfriend concedes not getting along too well with grandma. And, you will recall she certainly isn't independently wealthy, if she is selling her body on the streets for cash. But, she works at the store. She would like to go to California, could use all—a little bit of money.

"Who's got money? Grandma's got money. Grandma has money over the weekend. Bernie, how about if we rip off Grandma?"

untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.

"(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility."

In the instant case, to demonstrate that Lindy Ellis is a prostitute is not to show that she has the character trait of untruthfulness. The cross-examination quoted makes it apparent that the prosecutor was attempting to impeach the credibility of Lindy Ellis by establishing her bad moral character because of her prostitution and that she was biased in favor of the defendant for whom she "would sell [her] body".

If the prosecutor desired to show bias, it would have been sufficient to elicit an admission from the witness that she had posted the money to secure the defendant's release on bail. Instead, however, the prosecutor chose to emphasize Miss Ellis's prostitution activities and thereby necessarily suggested to the jury that the defendant was a person of bad character because he was closely associated with a prostitute and may have been her pimp.

We find that permitting this line of cross-examination was reversible error. The evidence was not admissible under MRE 608(b) because the conduct involved was unrelated to truthfulness. Insofar as the evidence was relevant to show the bias of the witness, it should have been excluded because the danger of unfair prejudice substantially outweighed its probative value. MRE 403. Since the defendant's conviction of assault with intent to rob while armed formed the basis for his conviction as a third-felony offender, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the defendant's conviction of assault with intent to rob while armed and his conviction of being a third-felony offender and we remand the case to the Ingham Circuit Court for a new trial. In light of our disposition of this matter we do not address defendant's other allegations of error.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.