PEOPLE v IGAZ

Docket Nos. 53708, 57598. Submitted April 14, 1982, at Lansing.—
    Decided August 18, 1982. Leave to appeal denied, 414 Mich 963.

    James C. Igaz was convicted in four separate trials of absconding
    on bond, unauthorized use of a telephone, breaking and enter-
    ing an unoccupied dwelling, larceny in a building, and extor-
    tion, for each of which offenses he received a prison sentence,
    Bay Circuit Court, Eugene C. Penzien, J. In addition, following
    these convictions his probation on an earlier offense was re-
    voked and he was sentenced accordingly. Defendant appealed
    and the cases were consolidated. Defendant alleges several
    errors in the various proceedings. *Held:*

    1. During cross-examination of the defendant in the trial of
    the absconding on bond charge the trial court instructed the

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law § 970.
[2, 7] 74 Am Jur 2d, Telecommunications § 204 *et seq.*
    Criminal prosecutions for use of "blue box" or similar device
    permitting user to make long distance telephone calls without
    incurring charges. 78 ALR3d 449.
[3] 21 Am Jur 2d, Criminal Law §§ 16, 17.
    73 Am Jur 2d, Statutes § 346.
[4, 12] 21A Am Jur 2d, Criminal Law §§ 752, 984, 985.
    Modern status in state courts as to defense counsel's representation
    of criminal client. 2 ALR4th 27.
[5, 6] 29 Am Jur 2d, Evidence § 269.
[8] 75 Am Jur 2d, Trial § 727.
[9] 81 Am Jur 2d, Witnesses § 563.
[10] 73 Am Jur 2d, Statutes § 244.
[11] 21A Am Jur 2d, Criminal Law § 712.
    29 Am Jur 2d, Evidence § 806.
    31 Am Jur 2d, Expert and Opinion Evidence § 77.
    Propriety of requiring accused to give handwriting exemplar. 43
    ALR3d 653.
[13] 29 Am Jur 2d, Evidence § 327.
[14] 75 Am Jur 2d, Trial § 623.
[15] 41 Am Jur 2d, Indictments and Informations § 84.
[16] 5 Am Jur 2d, Appeal and Error § 938.
[17] 21 Am Jur 2d, Criminal Law § 578.

defendant not to discuss his testimony with his attorney during a noon recess. This improperly infringed upon the defendant's right to assistance of counsel. The conviction of absconding on bond is therefore reversed.

2. The prosecution properly aggregated the values of the unauthorized telephone charges in order to exceed $100, thereby satisfying the statutory requirement for the charging of a felony rather than a misdemeanor.

3. The statute proscribing the unauthorized use of a telephone is not impermissibly vague.

4. Defendant was not deprived of effective assistance of counsel where his attorney, as a matter of trial strategy, referred to previous investigations of defendant regarding unauthorized telephone use, as part of an attempt to explain a confession defendant had written.

5. Rebuttal evidence that the defendant had recently been charged with another offense of unauthorized use of a telephone was properly admitted to show inconsistencies in the testimony of defendant's mother. The issue of defendant's authority to use the telephone had already been raised, and the mother's testimony was not so prejudicial that it should have been excluded from evidence.

6. The offense of unauthorized use of a telephone does not contain an element of intent to injure or defraud.

7. The trial court properly refused to instruct the jury on mistake, because the defense of mistake had not been raised.

8. The prosecutor was erroneously allowed to impeach an alibi witness, in the trial on breaking and entering and larceny in a building, by attempting to establish the general bad character of the witness based upon her sexual mores. Impeachment evidence may properly bear only upon a witness's truthfulness or untruthfulness. The convictions for breaking and entering and larceny in a building are reversed.

9. The extortion statute, which proscribes a threat of "any injury to the person", encompasses an emotional injury as well as a physical one. An interpretation which includes emotional injury does not render the statute impermissibly vague.

10. The prosecution was properly allowed to present expert testimony that handwriting exemplars submitted by the defendant pursuant to a court order were intentionally distorted in an attempt to avoid providing a valid handwriting exemplar.

11. Failure of defense counsel to place a file number of the extortion trial on his notice of insanity defense, which ultimately resulted in the trial court's not allowing a certain

witness to testify, did not deprive defendant of effective assistance of counsel. Defendant was still allowed to present the defense and he still had two witnesses available to testify. The testimony of the third witness would have been cumulative, and the evidence against the defendant overall was strong.

12. The defendant was properly impeached by evidence of prior convictions.

13. The jury instructions, taken as a whole, were adequate.

14. Supplemental informations were sufficient to inform the defendant of the charges against him, even though the language was not exactly that used in the statute, where the statutory citations used were correct.

15. Defendant's sentences were not improper.

16. The fact that some of defendant's convictions are to be reversed does not necessitate a new hearing on the revocation of probation. Because those convictions were not the sole basis for revocation of probation, that case is to be remanded for resentencing.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO COUNSEL.

The right of a criminal defendant to assistance of counsel is fundamental; a trial court's instruction to a defendant that he not discuss his testimony with his own counsel during a recess in the midst of cross-examination is error requiring reversal (US Const, Am VI).

2. CRIMINAL LAW — UNAUTHORIZED USE OF A TELEPHONE — FELONIES.

The use of the words "total value" in the statute prohibiting unauthorized use of a telephone allows the aggregation of several telephone calls in order to reach the value of service obtained of over $100, thus allowing the offense to be charged as a felony rather than a misdemeanor (MCL 750.219a; MSA 28.416[1]).

3. CRIMINAL LAW — STATUTES — VAGUENESS.

A criminal statute is void for vagueness where it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.

4. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

The standard against which the performance of a criminal defense counsel is measured is whether, but for the mistake

complained of, the defendant would have had a reasonably likely chance of acquittal.

5. EVIDENCE — REBUTTAL EVIDENCE.

Rebuttal evidence may be allowed either to disprove prior testimony of a witness or to refute evidence bearing on an issue already properly raised.

6. WITNESSES — BIAS — REBUTTAL TESTIMONY.

Rebuttal testimony which establishes the bias of a witness may properly be admitted at trial unless its probative value is outweighed by its prejudice; in addition, a proper foundation must be laid before the introduction of such testimony.

7. CRIMINAL LAW — UNAUTHORIZED USE OF A TELEPHONE — INTENT.

The statute prohibiting unauthorized use of a telephone does not require proof of an intent to defraud (MCL 750.219a; MSA 28.416[1]).

8. CRIMINAL LAW — DEFENSES — JURY INSTRUCTIONS.

A defense must have actually been raised in order for a defendant to be entitled to have the jury instructed on that defense.

9. WITNESSES — IMPEACHMENT — TRUTHFULNESS OF WITNESS.

It is an abuse of discretion per se to allow the impeachment of the credibility of a witness on cross-examination by evidence of a character trait other than truthfulness or untruthfulness.

10. EXTORTION — EMOTIONAL INJURY.

The phrase "any injury to the person" in the statute proscribing extortion includes emotional injury; an interpretation of the statute to include emotional injury does not render the statute impermissively vague (MCL 750.213; MSA 28.410).

11. CRIMINAL LAW — HANDWRITING EXEMPLARS.

A court may require a criminal defendant to provide handwriting exemplars, and it is not improper for the prosecution to show by expert testimony that a defendant attempted to avoid providing a valid handwriting sample by intentionally distorting his handwriting.

12. APPEAL — MISTAKE OF COUNSEL — CRIMINAL LAW.

The Court of Appeals will not grant a new trial based upon an inadvertent mistake of defense counsel in failing to place the file numbers on the notice of insanity defense unless the defendant was deprived of a defense theory or that but for the mistake the defendant would have had a reasonably likely chance of acquittal.

13. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACH-
MENT.

Among the factors to be considered in determining whether
evidence of a prior offense should be admitted for purposes of
impeaching the defendant are the nature of the prior offense,
whether the conviction was for substantially the same conduct
as that for which the defendant is on trial, and the effect on
the decisional process if the defendant does not testify for fear
of impeachment by evidence of prior convictions; if, after
evaluating these factors, the judge believes the prejudicial
effect of admitting evidence of a prior conviction outweighs its
probative value, the evidence should be excluded.

14. CRIMINAL LAW — JURY INSTRUCTIONS.

A conviction will not be reversed because of an allegedly errone-
ous jury instruction if the instructions taken as a whole were
adequate.

15. CRIMINAL LAW — INFORMATIONS.

An information is sufficient to inform a defendant of the charges
against him where the information lists the proper statutory
numbers even though the language used in the information
does not follow the statutory language exactly.

16. APPEAL — SENTENCING.

The Court of Appeals refrains from reviewing a sentence which
falls within the statutory limits and is not so disproportionate
as to constitute cruel or unusual punishment.

17. CRIMINAL LAW — PROBATION REVOCATION — SENTENCING.

The subsequent reversal of a conviction upon which a probation
revocation was based does not require reversal of the probation
revocation if the conviction was not the sole basis for the
probation revocation; the proper remedy is a remand for resen-
tencing on the probation revocation.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *George B. Mullison,*
Prosecuting Attorney, and *Thomas J. Rasdale,*
Assistant Prosecuting Attorney, for the people.

*Jan Armon,* for defendant on appeal.

Before: DANHOF, C.J., and R. B. BURNS and
WAHLS, JJ.

PER CURIAM. Defendant appeals from five different convictions, to wit: absconding on bond, MCL 750.199a; MSA 28.396(1), unauthorized use of a telephone, MCL 750.219a; MSA 28.416(1), breaking and entering an unoccupied dwelling, MCL 750.110; MSA 28.305, larceny in a building, MCL 750.360; MSA 28.592, and extortion, MCL 750.213; MSA 28.410. The cases were consolidated on appeal. Due to the distinct nature of the various trials, we will discuss each case individually.

## I. Absconding on Bond

Defendant was convicted for absconding on bond, contrary to MCL 750.199a; MSA 28.396(1). He was sentenced to a sentence of 4 to 6 years, to be served consecutively with his sentences for the other offenses, and received credit for 188 days. The charge for absconding on bond arose when defendant, who was out on bond, failed to appear for a scheduled trial on outstanding charges.[1] Defendant was arrested a few days later and, without counsel present, appeared before the trial court. The court ordered him held without bond. The trial judge based his decision on the fact that, in the past, defendant also had failed to appear before other judges when required to do so.

Defendant raises several issues on appeal, only one of which requires reversal. The issue raised is whether the judge violated defendant's right to counsel by instructing defendant not to discuss his testimony with his own counsel during the noon recess, which fell in the middle of defendant's cross-examination.

The only time Michigan Courts have addressed

---

[1] He was charged with unauthorized use of a telephone, unauthorized entering of an unoccupied building, and breaking and entering an unoccupied dwelling. The charge of unauthorized entering of an unoccupied building later was dropped.

this issue was in *People v Prevost,* 219 Mich 233; 189 NW 92 (1922). In *Prevost* the court instructed all witnesses not to talk with any of the attorneys. During the cross-examination of defendant the trial court took a recess. Defendant was forbidden from conferring with his counsel during the break. The Supreme Court affirmed. Although *People v Prevost* specifically has not been overruled, it is no longer viable law in light of *Geders v United States,* 425 US 80; 96 S Ct 1330; 47 L Ed 2d 592 (1976), and its progeny. In *Geders* a defendant on the eve of his cross-examination was forbidden from consulting with his attorney during the overnight recess. The United States Supreme Court ruled that this order violated defendant's Sixth Amendment right to counsel. The decision did cite the *Prevost* case. However, the holding in *Geders* did not reach the issue of whether or not the denial of access to counsel during a shorter recess would violate the Sixth Amendment.

The right to assistance of counsel is fundamental. The purpose of prohibiting an attorney and defendant from consulting during recesses is to deter impropriety. The fear is that testimony will be fabricated in light of the testimony already given. However, *Geders, supra,* 91, held:

"There are a variety of ways to further the purpose served by sequestration without placing a sustained barrier to communication between a defendant and his lawyer. To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper 'coaching,' the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel. *Brooks v Tennessee,* 406 US 605 [92 S Ct 1891; 32 L Ed 2d 358] (1972)."

We believe that under the present state of the law the balance must be struck in favor of preserving the right to counsel, even where a short recess is involved.[2] This extension of *Geders* finds support in several United States Court of Appeals decisions. *United States v Bryant,* 545 F2d 1035 (CA 6, 1976); *United States v Conway,* 632 F2d 641 (CA 5, 1980); *United States v Allen,* 542 F2d 630 (CA 4, 1976); *United States v Vesaas,* 586 F2d 101 (CA 8, 1978). See, also, *United States v DiLapi,* 651 F2d 140 (CA 2, 1981); *contra, Bailey v Redman,* 657 F2d 21 (CA 3, 1981).

In conclusion, based on the infringement of defendant's Sixth Amendment right to counsel, his conviction for absconding on bond is reversed.

## II. Unauthorized Telephone Calls

Defendant was convicted for unauthorized use of a telephone, contrary to MCL 750.219a; MSA 28.416(1). Between March and June, 1979, defendant made at least 160 calls from the coin phone located in the county jail. The bulk of them were billed as third-party calls to defendant's brother, Michael Igaz. The cost of the largest single telephone call amounted to $25.60. The grand total of all the calls defendant billed to the third parties was approximately $1,200, but the prosecutor only charged defendant with making unauthorized calls valued at $736.04.

Apparently, defendant did have permission to use his brother's telephone once or twice. However, defendant's brother testified that he never granted defendant permission to bill third-party calls to his telephone.

In the past defendant had confrontations with

---

[2] It does not matter if the order just precludes discussing testimony. No infringement of the Sixth Amendment right to counsel is favored. *United States v Vesaas,* 586 F2d 101, 102, fn 2 (CA 8, 1978).

the telephone company because of unauthorized use of telephones. On another occasion he signed an agreement with the telephone company wherein he confessed placing unauthorized calls and agreed to repay the telephone company for them. In exchange, the telephone company refrained from prosecuting the defendant. The defendant made only one payment under the agreement. Eventually, defendant was charged with unauthorized use of a telephone.

First, defendant argues that he was erroneously prosecuted under the unauthorized use of a telephone statute, MCL 750.219a; MSA 28.416(1), because various telephone calls cannot be aggregated to satisfy the requirement that calls must exceed $100 in value before a person is guilty of a felony. MCL 750.219a; MSA 28.416(1) provides:

"Any person who knowingly obtains or attempts to obtain telephone service or the transmission of a telephone message by the use of any false or fictitious telephone credit number or telephone number, or by the use of any telephone credit number or telephone number of another without the authority of the person to whom such credit number or telephone number was issued, is guilty of a misdemeanor. If the *total value* of telephone service obtained in a manner prohibited by this section exceeds $100.00, the offense shall be prosecuted as a felony." (Emphasis supplied.)

We cannot help but conclude that the term "total value" used in the statute sanctions aggregating the various telephone calls to satisfy the requirement that a felony is committed if the total calls placed exceed $100 in value. This interpretation is not only consistent with the plain wording of the statute but also is dictated by logic. One could make a single call over $100 in value. However, that situation is the exception. These calls

were all made in a relatively short time span and could be viewed as one continuous call.

Defendant relies on *People v Robinson*, 97 Mich App 542; 296 NW2d 99 (1980), to support his position. In *Robinson* the Court affirmed the dismissal of a charge of larceny by false pretenses over $100, MCL 750.218; MSA 28.415. There, nine distinct and separate transactions were merged to reach the $100 figure. *Robinson* does not change our position. There, the statute specifically stated that before a felony could be charged the value of the item. had to exceed $100. This imposes a requirement on the prosecution to demonstrate a continuous time sequel and single intent. The use of the words "total value" in the unauthorized use of a telephone statute demonstrates an intent to allow the prosecution to aggregate calls that are disjointed in time when charging defendant with a felony.

Defendant argues that, if the calls may be aggregated, the statute is void for vagueness. In *People v Herron*, 68 Mich App 381, 382; 242 NW2d 584 (1976), the standard for determining when a criminal statute is void for vagueness was set forth:

> " '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' *Lanzetta v New Jersey*, 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939)."

We believe the words of the statute are quite clear.

The next issue to consider is whether or not defendant was denied effective assistance of counsel when his own attorney elicited in the telephone trial that defendant twice earlier had been

investigated for the same conduct. Again, the standard against which the performance of counsel is measured is: But for the mistake complained of would defendant have had a reasonably likely chance of acquittal? *People v Brady Smith,* 108 Mich 338; 310 NW2d 235 (1981).

The defense had a major obstacle to overcome: the testimony of defendant's brother. Defendant's brother testified that he had not given defendant permission to charge the calls. Moreover, defendant had signed a confession. The defense counsel, rather than let the confession remain in evidence unaddressed, tried to elicit from defendant an explanation of the confession.[3] This was a trial strategy of defense counsel.

We are extremely reluctant to substitute our judgment for a counselor's in matters of trial strategy. *People v Lotter,* 103 Mich App 386; 302 NW2d 879 (1981). A variety of trial strategies may be appropriate in any given case. We do not find that but for trial counsel's particular strategy defendant would have been acquitted. The evidence against the defendant, which included the confession, was strong.

Defendant raises the issue of whether the trial judge erred in allowing the prosecution to present rebuttal evidence that defendant recently had been charged with another offense of unauthorized use of telephones.

The testimony was proper rebuttal evidence. At trial, defendant's mother testified on his behalf. At one point the telephone company had filed charges against defendant for third-party calls on his mother's telephone. The mother changed her testi-

---

[3] Defendant testified that he mistook the confession for the ones he had previously signed with the telephone company. He also claimed he was under the influence of alcohol and drugs when he signed the agreement.

mony at the preliminary examination and vowed that she had in fact given her son permission to use her phone. As a result of her testimony at the preliminary examination, the portion of the charges stemming from use of her telephone number was dismissed.

Rebuttal evidence may be allowed either to disprove prior testimony of a witness or to refute evidence bearing on an issue already properly raised. *People v Sheldon,* 407 Mich 539; 287 NW2d 176 (1980); *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975). In the instant case the issue of whether defendant had permission to use the telephone already had been raised. The purpose of the rebuttal evidence was to demonstrate the inconsistencies in the mother's testimony on the authority of her son to use telephones.

Rebuttal testimony which establishes the bias of a witness properly is entered into trial. However, if the information elicited is too prejudicial, the prejudice outweighs its probative value. Under such circumstances, the evidence of bias must be excluded. See *People v Chaplin,* 412 Mich 219; 313 NW2d 899 (1981). The evidence extracted from defendant's mother was not prejudicial enough to be excluded from evidence.

In *People v Harrell,* 54 Mich App 554; 221 NW2d 411 (1974), *aff'd* 398 Mich 384; 247 NW2d 829 (1976), this Court ruled that a party may not impeach a witness for bias unless a foundation is first laid. The plaintiff failed to lay a foundation before impeaching the witness. However, where the evidence against a defendant is overwhelming and the rebuttal evidence was duplicative, the error is harmless. *People v Lauzon,* 84 Mich App 201; 269 NW2d 524 (1978); *People v Meadows,* 80 Mich App 680; 263 NW2d 903 (1977).

The evidence against defendant was overwhelming. His confession provides all the material elements of the charge. A brother testified against him. Therefore, we find the error harmless.

The next issue presented is whether the trial judge erred in refusing to give the intent instruction at the telephone trial, pursuant to CJI 6:1:04, which provides:

"To act with the intent to injure or defraud means to act with the intent to deceive or cheat, ordinarily for the purpose of causing some financial loss or loss of property or something of value to another, or to bring some financial gain to oneself knowing such act will cheat or defraud another."

After closely scrutinizing the statute, we find the judge properly refrained from utilizing CJI 6:1:04. The statute simply does not require an intent element for a violation to occur. The prosecution needed to establish that defendant knowingly made the calls, nothing more. Therefore, defendant was not entitled to CJI 6:1:04. The trial judge did spell out the element necessary to the crime and gave the jury an instruction on specific intent, CJI 3:1:16.[4]

Another exception defendant takes to the jury

[4] CJI 3:1:16 provides:

"When a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist.

"Intent is a decision of the mind to knowingly do an act with a conscious [fully formed] objective of accomplishing a certain [specific] result.

\*  \*  \*

"The intent with which a person does an act is known by the way in which he expresses it to others or indicates it by his conduct. The intent with which a person does an act can sometimes be determined from the manner in which it is done, the method used and all other facts and circumstances, but only if that intent is established by the evidence."

instructions is whether the judge erred in refusing to give the mistake instruction, CJI 6:1:03.

Defendant tried to argue that he erroneously thought he had permission from his brother to charge the calls. To the contrary, his brother testified that he had not given defendant permission to charge the calls. The defense theory of mistake was not listed when the case was filed with the Court, nor was it raised during defendant's opening or closing argument. In order for an instruction on a defense to be submitted to the jury, that defense must actually be raised. *People v Hoskins,* 403 Mich 95, 100; 267 NW2d 417 (1978). The defense of mistake was not actually raised. The purpose of defendant's testimony was to discredit his brother's testimony. The conviction of unauthorized use of a telephone is affirmed.

### III. Breaking and Entering

Defendant was convicted of breaking and entering an unoccupied dwelling, MCL 750.110; MSA 28.305, and larceny in a building, MCL 750.360; MSA 28.592. Defendant and his brother-in-law took an antique organ from an unoccupied home. The brother-in-law testified at trial that he believed the defendant had owned not only the house but also the organ. When the brother-in-law found out that the organ was stolen, he returned it.

There is an issue raised which is dispositive of this case. Did the trial judge err in allowing the prosecutor to ask defendant's alibi witness about her illegitimate son? Defendant's sister testified that defendant was at their parents' home in her company when the breaking and entering supposedly occurred.

The following exchange took place upon her cross-examination:

"*Q.* What's your little brother's name?
"*A.* John.
"*Q.* Isn't he in fact your son, not your little brother?
"*A.* I'm not going to answer that."

The trial judge directed defendant's sister to answer the question. She revealed that John was her son. However, on redirect she further explained that John also was her brother since he had been legally adopted by her parents.

Plaintiff's reliance on *People v Newsome,* 30 Mich App 139; 185 NW2d 921 (1971), is misplaced since the case was *sub silentio* overruled by *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977). *Bouchee* held that it is per se an abuse of discretion to offer evidence of a character trait other than truthfulness or untruthfulness on cross-examination. There, the prosecution tried to impeach defendant's wife with the fact that their four children were born before their marriage. Recently, the Supreme Court again emphasized that evidence produced on cross-examination can attack only the credibility of the witness. The Court stated in *People v Chaplin,* 412 Mich 219; 313 NW2d 899 (1981):

"As we said in *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977), it is improper to impeach the credibility of a witness by demonstrating on cross-examination that the witness has a bad general character in terms of morality."

The information elicited from defendant's sister is as prejudicial as the information sought in *Bouchee.* The attempt to establish the general bad character of individuals based on their sexual mores is not sanctioned. *People v Chaplin, supra.* Such evidence is per se inadmissible because it

does not reach the issue of credibility. The convictions for breaking and entering and larceny in a building are reversed.

## IV. Extortion

The last case on appeal is defendant's conviction for extortion, contrary to MCL 750.213; MSA 28.410.

Before defendant was denied bond he was held in jail subject to posting bond. During this time, defendant started sending letters to a former girl friend.[5] In the letters defendant informed the woman that, if she did not provide him with the money to post bond, he would turn over nude photographs of her to the attorney retained by her ex-husband. This threat arrived at a time when the woman was embroiled in a custody battle with her ex-husband. The ex-husband was seeking a change in custody of their daughter from the mother.

In another letter defendant threatened to tell the Friend of the Court about the woman's boyfriends and to hand over the photographs directly to the court. The photographs were taken by the woman's second ex-husband. She kept the photographs in a locked chest at home. Defendant resided at the woman's house for a period of time. Defendant had the key to the chest. Apparently, without the woman's permission, defendant appropriated the photographs from the chest.

The woman did not provide the defendant with money for bond. Ultimately, the photographs were in the possession of an attorney for the ex-husband.[6]

---

[5] There was testimony to the effect that defendant and the woman had signed a contract exchanging marriage vows.

[6] The attorney refused to reveal how he came to possess the photographs.

MCL 750.213; MSA 28.410 states:

"Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony."

In one of the letters defendant wrote:

"Dear Beth wife
"I love you please get me out of here Beth if I'm not out by 4.30 on monday I have arrranged for Arnie to get those nude photo's of you and Al and I will also testify in Arnie behalf. If I'm not out monday Arnie will receive those pictures and I will also help Arnie get Melissa from you this is not a threat it is a promise. Beth I want out of her I will sell those pictures to Arnie for my freedom if you dont get me out of here. I know you can get the money to do it. * * * The only way Arnie can win the custody case is if he has those pictures and letters I did want to write a nice letter but you did not write me a very nice letter saturday. Well if I'm not out monday I promise and guarantee you will

LOSE MELESSA

"Talk to me get me out please please do you want to keep Melissa?"

The issue is whether MCL 750.213; MSA 28.410, which proscribes threatening "an injury to the person", contemplated that only the threat of physical injury was within the ambit of the statute.

Whether emotional injury is included within the phrase, "injury to the person" is an issue of first

impression. The statute has been interpreted to include the threat to accuse another person of a crime. *People v Percin,* 330 Mich 94; 47 NW2d 29 (1951). A threat to injure a person or property is encompassed by the statute. *People v Atcher,* 65 Mich App 734; 238 NW2d 389 (1975).

*Meek v State,* 205 Ind 102; 185 NE 899 (1933), involved a charge of extortion under a statute similar to Michigan's. There, grave robbers threatened a woman that they would steal away the body of her husband from the cemetery for purposes of selling it. The Court rejected the claim that the letters could not be a basis for prosecution since they did not threaten to injure the body. The Court gave a broad interpretation to the words "injury to the person":

"The term 'injury to the person or property' must * * * be construed in the broader sense and as intended to include a threat to invade any right for the invasion of which an action in damages would lie for injury to the person or property. The damage that would result to a widow from the disinterment, removal or destruction of the body of her husband consists principally, at least, in physical and mental pain, anguish and suffering, and to that extent is an 'injury to the person' and actionable as such." *Id.,* 106.

In *People v Krist,* 97 Mich App 669, 675; 296 NW2d 139 (1980), this Court stated: "The underlying purpose of statutory extortion [is] to plug loopholes in the common law crime of robbery."

We believe the Legislature intended the words "any injury to the person" to include emotional injury. The Legislature, if it had intended to restrict the scope of the statute to physical injuries, could have inserted the word "physical" in place of the word "any". Instead, it selected to use the expansive wording "'any' injury to the person".

Defendant argues that if the statute is defined to encompass mental injury, it is impermissibly vague. The statute never has been interpreted under the instant set of circumstances. However, this does not *a fortiori* require us to hold that the statute does not provide notice that defendant's conduct fell within its ambit.

*People v Goulding,* 275 Mich 353, 359-360; 266 NW 378 (1936), stated:

> "Defendant ought not to be convicted unless he is clearly and unequivocally within the language of a statute which by its terms covers his case. The statute may not be extended beyond its plain terms by judicial construction, and defendant convicted, by showing acts which ought to have been within the terms of the statute but are not."

See also *People v Llewellyn,* 401 Mich 314, 328; 257 NW2d 902 (1977). Emotional injury falls within the plain terms of the words "any injury to the person". Moreover, the statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Grayned v City of Rockford,* 408 US 104, 108; 92 S Ct 2294; 33 L Ed 2d 222 (1972).

*United States v Nardello,* 393 US 286, 294; 89 S Ct 534; 21 L Ed 2d 487 (1969), supports this definition. There, defendant was convicted under the "travel act". Specifically, the defendant had engaged in interstate commerce intending to carry on extortion. The applicable law, Pennsylvania law, did not include such behavior within its extortion statute. Nonetheless, the Supreme Court affirmed, concluding:

> "In light of the scope of the congressional purpose we decline to give the term 'extortion' an unnaturally

narrow reading, cf. *United States v Fabrizio*, 385 US 263, 266-267 [87 S Ct 457; 17 L Ed 2d 351, 355] (1966), and thus conclude that the acts for which appellees have been indicted fall within the generic term extortion as used in the Travel Act." *Id.*, 296.

The next issue is whether allowing the prosecution's handwriting expert witness to testify at trial that defendant had attempted to disguise his handwriting in the exemplars violated defendant's Fifth Amendment privilege against self-incrimination. Defendant had submitted the exemplars pursuant to a court order to allow the expert witness to compare defendant's handwriting with the letters sent.

Defendant complains that the handwriting exemplars were used unconstitutionally to show guilty knowledge.

The general rule is that a court may force a defendant to provide handwriting exemplars. *Gilbert v California*, 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967); *People v Petrac*, 89 Mich App 188; 280 NW2d 478 (1979). The United States Supreme Court stated in *Gilbert*, 266-267:

"The taking of the exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of "real or physical evidence" * * *.' *Schmerber v California*, 384 US 757, 763-764 [86 S Ct 1826; 16 L Ed 2d 908 (1966)]. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the

content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection." (Citations omitted.)

Other courts have found it permissible to allow handwriting experts to testify that the defendants disguised their handwriting in the exemplars. *United States v Wolfish,* 525 F2d 457, 461 (CA 2, 1975); *United States v Stembridge,* 477 F2d 874 (CA 5, 1973). When confronted with the argument that the procedure constituted using exemplars as testimonial evidence to imply a consciousness of guilt, courts have ruled the procedure constitutional. The basis for the ruling is that:

"An attempt to disguise the handwriting in an exemplar is, in effect, a refusal to provide an exemplar, for if an accused were free to disguise his writing, without any sanctions, exemplars would be worthless. Hence it is not improper for the prosecution to show that the defendant attempted to avoid providing a valid handwriting sample by intentionally distorting his handwriting." *United States v Stembridge, supra,* 876.

We find the rationale of *United States v Stembridge* persuasive. Defendant, in an attempt to disguise his handwriting, in effect refused to answer a court order. This conduct cannot be allowed to go untempered. To do so would render the right to order handwriting exemplars a nullity.

The next issue is whether defense counsel's inadvertent failure to place the extortion trial file number on defendant's insanity defense motion violated defendant's right to effective assistance of counsel. Defense counsel, prior to trial, filed a notice of insanity defense. However, this list did not contain the name of a witness, the only nonfamily member witness to substantiate the insanity defense. The notice to add the witness was filed

but the number of the extortion trial inadvertently was omitted from it.

The prosecution, at trial, objected to allowing the additional witness to testify, based on the inability to contact the witness. Although the judge allowed the insanity defense, he did not allow the additional witness to testify. Defense counsel did not call the other witnesses to testify because he believed "it would be futile".

Unless this client is deprived of a defense theory, this Court will not grant a new trial absent a finding that but for this mistake defendant would have had a reasonably likely chance of acquittal. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). The failure to place the file number on the notice did not deprive defendant of his defense. The court still allowed it to be presented.

The court's ruling deprived defendant only of the testimony of a third witness. In *People v Bedford,* 78 Mich App 696; 260 NW2d 864 (1977), this Court affirmed where the defense counsel had inadvertently omitted a sixth name from the alibi witness list. The sixth witness's testimony would have been cumulative. In the instant case the defendant still had two people enlisted to testify on his behalf. The testimony of the third witness would have been cumulative. Moreover, the evidence against defendant overall was very strong. Even if the third witness had testified, the chance of acquittal was remote. Therefore, defendant was not denied effective assistance of counsel.

Defendant raises several other issues, common to all the cases, which can be disposed of summarily. In the various trials, the judge allowed the prosecution to impeach the defendant with evidence of some of his prior convictions. The defendant argues that the trial judge abused his discre-

tion in admitting this evidence into trial, by placing too much emphasis on its probative value and not enough on its prejudicial effect.

We find the judge did not abuse his discretion. In *People v Hughes*, 411 Mich 517, 520-521; 309 NW2d 525 (1981), the Court stated:

"Among the factors to be considered are the nature of the prior offense, whether the conviction was for substantially the same conduct as that for which the accused is on trial, and the effect on the decisional process if the accused does not testify for fear of impeachment by prior convictions.

"The purpose of this inquiry is two-fold:

"1) To put before the jury only those prior convictions indicative of the defendant's disposition toward truthfulness and veracity; and

"2) To keep from the jury those convictions which, although they may be indicative of defendant's disposition toward truthfulness, may interfere with the jury's ability to determine the defendant's guilt or innocence on the basis of the evidence. Such interference is what is meant by 'prejudice'.

"If, after evaluating these factors, the judge believes the prejudicial effect of admitting prior conviction evidence outweighs its probative value, the evidence should be excluded."

Here, the prior convictions for absconding on bond and the element of theft in the unarmed robbery conviction did deal with credibility. The prejudicial effect of admitting evidence of the prior convictions was not overriding, because the convictions were distinct. The cases became a matter of credibility between the testimony of defendant and family members. Where the case narrows to the credibility of two persons, there is even greater reason for exploring all avenues which would shed light on which of the witnesses to believe. *People v*

*Floyd,* 71 Mich App 462, 464; 248 NW2d 586 (1976).

Defendant requests this Court to reverse each of his convictions because the trial judge gave instruction CJI 3:1:05 rather than CJI 3:1:04. The Court will not reverse if the jury instructions taken as a whole are adequate. *People v Borney,* 110 Mich App 490; 313 NW2d 329 (1981). The Supreme Court has approved an instruction substantially similar to CJI 3:1:05. *People v Trudell,* 220 Mich 166; 189 NW 910 (1922). We find no error.

The argument that the supplemental informations are deficient because they failed to inform the defendant of the charges against him is meritless. Admittedly, the four informations in the case do not exactly tract the statute. However, the statutory numbers of the charges are correct. Even though the statutory number is mere surplusage when the prosecution has listed the wrong one, where the proper one is cited the information is sufficient. *People v Corbeil,* 77 Mich App 691; 259 NW2d 193 (1977).

We also reject the claim that the trial judge considered improper matters in sentencing defendant. The trial judge specifically stated he was not considering the information in setting sentence. Furthermore, he gave extensive reasons for precisely why he imposed the given sentences.

Another issue raised is that defendant's sentences constituted cruel or unusual punishment. The sentences do not violate the Eighth Amendment of the United States Constitution. See *Rummel v Estelle,* 445 US 263; 100 S Ct 1133; 63 L Ed 2d 382 (1980); *Hutto v Davis,* 454 US 370; 102 S Ct 703; 70 L Ed 2d 556 (1982).

The Michigan Constitution proscribes cruel *or*

unusual punishment, Const 1963, art 1, § 16. However, we refrain from reviewing sentences if they fall within the statutory limits. *People v Burton,* 396 Mich 238; 240 NW2d 239 (1976). The sentences fall within the statutory limits and are not so disproportionate as to constitute cruel or unusual punishment. See *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977).

After defendant was tried and convicted he had a hearing for violating the probation terms of a 1978 unarmed robbery sentence. The five new convictions were entered on the record during the probation violation hearing. The defendant was found guilty of violating the terms of his probation. The issue becomes whether our decision to reverse the absconding on bond conviction, the breaking and entering conviction, and the larceny in a building conviction requires that defendant be granted a new revocation hearing.

In *People v Whitmore,* 407 Mich 894 (1979), a revocation of a probation sentence was reversed when the conviction which was the basis for the revocation of probation was reversed. However, in *People v Bergevin,* 406 Mich 307; 279 NW2d 528 (1979), *remanded* 407 Mich 1148 (1979), defendant was convicted of several offenses. Subsequently, two counts were vacated. Rather than granting defendant a new trial, the Supreme Court remanded the case for a new sentencing on the probation revocation conviction. We find the present case is similar to *Bergevin,* and remand the probation revocation conviction for a resentencing.

Defendant was not only found to have violated his probation based on the five convictions, but he also violated another term of his probation, namely, harassing his ex-wife. Where a conviction is not the sole basis for revoking probation a

rehearing is not necessary if the underlying conviction is reversed. A resentencing hearing is the proper remedy. See *People v Tebedo,* 107 Mich App 316; 309 NW2d 250 (1981).

In summation, we reverse the convictions for breaking and entering an unoccupied building, MCL 750.110; MSA 28.305, larceny in a building, MCL 750.360; MSA 28.592, and absconding on bond, MCL 750.199a; MSA 28.396(1). The probation revocation conviction is remanded for resentencing.

We affirm the convictions of unauthorized use of a telephone, MCL 750.219a; MSA 28.416(1), and extortion, MCL 750.213; MSA 28.410.

Affirmed in part, reversed in part, and remanded.