# UNITED STATES $v.$ FABRIZIO.

No. 47.   Argued November 7, 1966.—Decided December 12, 1966.

*Jerome I. Chapman* argued the cause for the United States, *pro hac vice,* by special leave of Court. With him on the brief were *Solicitor General Marshall, Assistant Attorney General Vinson, Beatrice Rosenberg* and *Sidney M. Glazer.*

*Betty D. Friedlander* argued the cause and filed a brief for appellee.

*Joseph A. Millimet,* by special leave of Court, argued the cause for the State of New Hampshire, as *amicus curiae,* urging affirmance. With him on the brief was *George S. Pappagianis,* Attorney General.

MR. JUSTICE HARLAN delivered the opinion of the Court.

An indictment filed in the United States District Court for the Western District of New York charged appellee, Fabrizio, with knowingly carrying "in interstate commerce from Keene, State of New Hampshire to Elmira, State of New York, . . . records, papers and writings, to wit: 75 acknowledgements of purchase for a sweepstakes race of the State of New Hampshire, to be used, and adapted, devised and designed for use, in a wagering pool with respect to a sporting event, that is: a sweepstake race of the State of New Hampshire, as he then well knew; all in violation of Section 1953 of Title 18, U. S. C." That section provides in pertinent part:

> "(a) Whoever, except a common carrier in the usual course of its business, knowingly carries or sends in interstate or foreign commerce any record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, or other device used, or to be used, or

adapted, devised, or designed for use in (a) book-making; or (b) wagering pools with respect to a sporting event; or (c) in a numbers, policy, bolita, or similar game shall be fined not more than $10,000 or imprisoned for not more than five years or both.

"(b) This section shall not apply to (1) pari-mutuel betting equipment, parimutuel tickets where legally acquired, or parimutuel materials used or designed for use at racetracks or other sporting events in connection with which betting is legal under applicable State law, or (2) the transportation of betting materials to be used in the placing of bets or wagers on a sporting event into a State in which such betting is legal under the statutes of that State, or (3) the carriage or transportation in interstate or foreign commerce of any newspaper or similar publication."

In response to a limited demand for a bill of particulars the Government stated that the only records, papers, and writings in issue were the specified 75 acknowledgments, and that no violation of state law was charged. Appellee then moved to dismiss the indictment on the ground that it did "not set forth facts sufficient to charge the Defendant with the violation of" this statute. In a supporting affidavit three specific shortcomings were claimed. Appellee first contended that § 1953 was intended to reach only the activities of organized crime or those participating in an illegal gambling or lottery enterprise. Absent an allegation that he was of this class no crime under the statute was charged. Appellee also contended that the indictment was deficient under the statute for failure to name an "illegal" wagering pool, the New Hampshire lottery being a state enterprise. Finally, it was urged that the allegation in the indictment that the acknowledgments were "to be used, and adapted, devised and designed for use" in the New

Hampshire Sweepstakes was impossible in fact or rested on a misinterpretation of "use" since the acknowledgments were valueless, and need not have been retained in order to collect on the sweepstakes.

The District Court thereupon dismissed the indictment holding that "[t]he charge in the indictment does not come within the purpose of Section 1953 . . . as disclosed in the legislative history of the Act." The Government brought the case directly here under the provisions of the Criminal Appeals Act, 18 U. S. C. § 3731. We noted probable jurisdiction, 383 U. S. 904. Our function under that Act is limited to the construction of the statute and "this Court is not at liberty to go beyond the question of the correctness of that construction and consider other objections to the indictment. The Government's appeal does not open the whole case." *United States* v. *Borden Co.,* 308 U. S. 188, 193. See also *United States* v. *Keitel,* 211 U. S. 370.[1] For reasons to follow, we reverse.

We turn to the specific deficiencies alleged by appellee, noting first that the indictment tracks the language of § 1953 and thus makes it incumbent upon appellee to demonstrate that the additional allegations he claims to be necessary are required to fulfill the statutory purpose. We may dispose quickly of appellee's first contention. The language of § 1953 makes it applicable to "Whoever, except a common carrier . . ." engages in the forbidden conduct. The need to exempt common carriers makes it clear that Congress painted with a broad brush, and did not limit the applicability of § 1953 in the respects urged by appellee. In companion legisla-

---

[1] Thus the sufficiency of the indictment as a pleading is not at issue, *United States* v. *Gilliland,* 312 U. S. 86, nor are questions relating to the bill of particulars presently before us. See *United States* v. *Comyns,* 248 U. S. 349, 353. Of course on remand these questions will remain unaffected by anything decided today.

tion where Congress wished to restrict the applicability of a provision to a given set of individuals, it did so with clear language.[2]   A statute limited without a clear definition of the covered group, as would be the case with § 1953 under appellee's view of it, might raise serious constitutional problems.   *Lanzetta* v. *New Jersey,* 306 U. S. 451.   And the asserted restriction would defeat one of the purposes of the section which is aimed not only at the paraphernalia of existing gambling activities but also at materials essential to the creation of such activities.   As the legislative hearings made clear, such materials are often legally fabricated and transported by persons engaged in legitimate businesses.[3]   Since the purpose of Congress was to thwart the interstate movement of such paraphernalia, the accomplishment of that goal required reaching "whoever" knowingly carried such materials in interstate commerce.[4]

Appellee's next contention, earnestly supported by the State of New Hampshire as *amicus,* is based on a similar reading of the legislative intent.   Appellee emphasizes the congressional desire to attack organized crime, a purpose not served by restrictions on the distribution of

---

[2] Thus 18 U. S. C. § 1084 is limited to persons "being engaged in the business of betting or wagering."

[3] See Hearings on H. R. 468 before Subcommittee No. 5 of the House Committee on the Judiciary, 87th Cong., 1st Sess., p. 261 (testimony of Mr. Stinson for American Totalisator Co.); Hearings on S. 1653 before the Senate Committee on the Judiciary, 87th Cong., 1st Sess., pp. 20 (testimony of Mr. Jacobs for Jennings & Co.), 25 (testimony of Mr. Nelson for Bally Manufacturing Co.).

[4] See, *e. g.,* Hearings on H. R. 468, *supra,* n. 3, at 26, where the Attorney General made clear that the primary purpose of the bill was to assist local enforcement of laws pertaining to gambling and like offenses; S. Rep. No. 589, 87th Cong., 1st Sess., p. 2, specified that the prohibition of the bill was "on the transportation of wagering paraphernalia" and would, without amendment, have comprehended the shipment of parimutuel equipment by legitimate business concerns.

New Hampshire Sweepstakes materials. Appellee argues that the specific exemption in § 1953 (b) of certain legal gambling enterprises from the provisions of § 1953 (a) and the limitation of § 1953 (a) itself to three types of gambling favored by organized crime reflect a congressional policy of respecting the individual gambling policies of the States and that these exemptions and limitations are merely indicative of that general policy. The New Hampshire Sweepstakes not being in existence when § 1953 was passed is necessarily exempted, so it is said, by policy rather than wording. The Government, on the other hand, contends that the specific exceptions point up the breadth of § 1953 (a) and the congressional desire to apply it except where Congress itself had carefully examined and approved exemption.

We find the Government's contention more in keeping with the language and purposes of the Act. Although at least one State had legalized gambling activities at the time the bill was passed, and the Congress was certainly aware of legal sweepstakes run by governments in other countries, Congress did not limit the coverage of the statute to "unlawful" or "illegal" activities. The sponsors of the bill made it clear that the measure as drafted was not so limited.[5] In passing 18 U. S. C. § 1084 and 18 U. S. C. § 1952 as companion provisions

---

[5] During the Senate Hearings Assistant Attorney General Miller, representing the Department of Justice, was specifically asked whether the bill was intended only to apply to "illegal" activities under state law. He unequivocally replied: "No sir. That proviso is not in here. It was the position of the Department that these types of paraphernalia, records, and other devices should be barred from interstate commerce." Hearings on S. 1653, *supra,* note 3, p. 294. Before the House Committee studying the bill Mr. Miller was equally explicit. He noted that the Irish Sweepstakes would be covered by the bill and soon after declared that Congress might consider a special exemption for parimutuel materials since these arose in activities legal under state law. Hearings on H. R. 468, *supra,* n. 3, p. 352.

to § 1953 Congress exempted transmission of legal gambling information from the former and limited the latter to those engaged in "unlawful activity." Thus it is reasonable to assume that Congress would have given a specific indication of exemption for state-run wagering pools if it had desired to exempt them.

Exemption would also defeat one of the principal purposes of § 1953, aiding the States in the suppression of gambling where such gambling is contrary to state policy. For example, New York prohibits the sale of lottery tickets and the transfer of any paper purporting to represent an interest in a lottery "to be drawn within or without" that State regardless of the legality of the lottery in the place of drawing. N. Y. Const., Art. I, § 9, N. Y. Penal Law §§ 1373, 1382. To allow the paraphernalia of a lottery, state-operated or not, to flow freely into New York might significantly endanger that policy. It is clear that the lottery statutes apply to state-operated as well as illegal lotteries, and that § 1953 was introduced to strengthen those statutes by closing the loopholes placed in them by the narrow interpretation of included materials by this Court in *France* v. *United States,* 164 U. S. 676, and *Francis* v. *United States,* 188 U. S. 375.[6] It would be anomalous to hold that where Congress meant to bar the lottery tickets themselves from interstate commerce it would allow the free circulation of other paraphernalia of the lottery.

Appellee's final contention raises a more troublesome problem under the Criminal Appeals Act under which this case is here. The indictment alleges the knowing interstate carriage of "records, papers and writings" and that these are "to be used, and adapted, devised and designed for use" in a forbidden activity. The Government contends that the question whether an acknowledgment can

---

[6] See H. R. Rep. No. 968, 87th Cong., 1st Sess., pp. 2–3; 107 Cong. Rec. 13902 (remarks of Senator Eastland)..

be, and was, so used is one of fact for the trial and not presently before this Court. In *United States* v. *Wiesenfeld Warehouse Co.*, 376 U. S. 86, 91–92, the Court dealt with a defendant's claim that a statute was not applicable to him because of his peculiar situation by stating:

"Whatever the truth of this claim, it involves factual proof to be raised defensively at a trial on the merits. We are here concerned only with the construction of the statute as it relates to the sufficiency of the information, and not with the scope and reach of the statute as applied to such facts as may be developed by evidence adduced at a trial."

Here, also, we might justifiably refuse to consider appellee's contention. However, the operation of the New Hampshire Sweepstakes, while a matter of fact, is not a disputed issue and a valid question is raised as to the construction of the use requirement in § 1,953. Thus this case may be considered similar to *United States* v. *Hvass,* 355 U. S. 570, where in an appeal under the Criminal Appeals Act this Court determined the question whether a district court rule was a "law of the United States" for the purposes of the perjury statute. Thus we may inquire whether an acknowledgment of purchase can, after issuance, have a use in the New Hampshire Sweepstakes.

New Hampshire Sweepstakes tickets are sold by a special machine. The customer writes a name and address on each ticket and is not restricted to purchasing for himself.[7] The owner of a ticket may be an individual who has not come to New Hampshire to make the purchase. The completed ticket is held in storage in the machine and eventually used in the drawing. The acknowledgment, practically a carbon copy of the ticket, is ejected from the machine. It need not be retained to collect a prize since all prizes are paid directly to the

---

[7] New Hampshire Sweepstakes Commission, New Hampshire Sweepstakes Program 5–8.

person named on the ticket, and thus appellee claims it has no use in the sweepstakes. But common sense and ordinary experience negative such a formalistic conclusion. The acknowledgment serves a significant psychological purpose by receipting the purchase and assuring the owner that his ticket is properly registered. Before this function is fulfilled by delivery of the acknowledgment to the owner of the ticket the acknowledgment remains a record, paper or writing "to be used" in the sweepstakes.[8] The Government contends that it will prove that the acknowledgments specified in this indictment were in fact being delivered to out-of-state ticket owners who had not themselves purchased their tickets in New Hampshire but had done so through Fabrizio and were thus assured of the proper completion of their purchases. We think it sufficient to hold that such a state of facts is comprehended by this indictment and within the terms of 18 U. S. C. § 1953. The constitutional power of Congress to enact the statute as we have construed it is not questioned by appellee.

The judgment of the United States District Court for the Western District of New York is reversed and the case remanded to that court for further proceedings consistent with this opinion. *It is so ordered.*

MR. JUSTICE STEWART, whom MR. JUSTICE FORTAS joins, dissenting.

For me, the key issue in this case is whether the acknowledgments of purchase that the appellee carried from New Hampshire to New York come within the

---

[8] See the colloquy between Assistant Attorney General Miller and Senators Keating and Kefauver reported at 293–294 of Senate Hearings on S. 1653, *supra*, n. 3. There Mr. Miller distinguished between paraphernalia which had served and exhausted its use, *e. g.*, losing tickets on a horse race, and paraphernalia whose function was not yet exhausted.

prohibition by 18 U. S. C. § 1953 (a) of interstate carriage of "any record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed for use in . . . wagering pools with respect to a sporting event . . . ." In the operation of New Hampshire's sweepstakes, tickets are sold through special machines, and are retained by the machines after the purchaser fills in a form provided for his name and address. After the tickets are drawn, winners are notified by telegram. The machines also provide the purchaser with an acknowledgment of purchase, which is merely a record of the purchase transaction. In order to be eligible for and to receive a prize, the purchaser of a ticket need not retain or present this purchase acknowledgment.

The Government does not contend that federal law makes it a crime for a person from another State to visit New Hampshire, purchase a sweepstakes ticket there, and return to his home. But it has argued that if a visitor to New Hampshire returns home with a receipt that merely acknowledges his personal purchase and in no way affects his eligibility to receive a prize, he has committed a crime punishable by imprisonment of up to five years.[1] Thus the Government requires us to assume that Congress has branded as felons many or most of the thousands of visitors to New Hampshire who have purchased sweepstakes tickets there. I do not believe that Congress intended such an unexpected result, which only the most abjectly literal approach to statutory interpretation could tolerate. No plausible legislative purpose would be served by the Government's construction, for when an individual takes an acknowledgment of purchase home from New Hampshire, merely retaining it as

---

[1] 18 U. S. C. § 1953 (a) provides that those who are convicted of a violation of the section "shall be fined not more than $10,000 or imprisoned for not more than five years or both."

.

a personal record of his purchase, the anti-gambling policies of other States are in no way undermined, and no opening is provided for the growth of organized racketeering.

The Court apparently shares my concern with the overbroad reach of some of the Government's contentions. For the Court's opinion stresses that the Government has informed this Court that in its proof at trial it expects to show that the appellee carried acknowledgments of purchase to New York, not to retain them as personal records of his own purchases, but to deliver them to other people in New York on whose behalf the appellee purchased tickets in New Hampshire. The Court concludes: "We think it sufficient to hold that such a state of facts is comprehended by this indictment and within the terms of 18 U. S. C. § 1953." *Ante,* at 271. I agree that if the appellee had been charged with conducting an interstate scheme for sale of sweepstakes tickets and the proof substantiated the charge, he could be validly convicted under § 1953. In such a case, the acknowledgments of purchase would be "used, or adapted . . . for use in . . . wagering pools with respect to a sporting event . . ." because they would serve the essential role of providing the ultimate purchasers with a claim against the agent who had purchased tickets in New Hampshire on their behalf. The operation of such a scheme would have the effect of extending sweepstakes sales across state lines, would undermine the anti-gambling policies of other States, and might provide fertile opportunities for racketeers.[2]

---

[2] New Hampshire has enacted legislation, N. H. Rev. Stat. Ann. § 284:21–*o*, designed to deter those who seek to profit from such a scheme:

"Purchase of Tickets for a Fee Prohibited. No person shall engage in the business of purchasing or offering to purchase a sweepstakes ticket or tickets for, in behalf of, or in the name of another for a fee or service charge which shall make the ultimate cost of

However, I must emphatically disagree with the Court's conclusion that "such a state of facts is comprehended by this indictment . . . ." The indictment merely charged the appellee with interstate transport of "acknowledgements of purchase for a sweepstakes race of the State of New Hampshire" and recited the language of § 1953.[3] The Government also furnished a bill of particulars that, insofar as relevant, simply reiterated the bare charge that the appellee had carried acknowledgments of purchase across state lines.[4] These charges were consonant with the Government's broad theory that all interstate carriage of acknowledgments of purchase is prohibited, even if the acknowledgment is retained solely as a personal record of the carrier's own purchase. That interpretation of the statute, along with the indictment that embodied it, was properly rejected by the trial court.

---

such ticket or tickets to the registered owner thereof greater than the legal price of such ticket or tickets as established by the sweepstakes commission under the authority of this subdivision. Whoever violates the provisions of this section shall be fined not more than five hundred dollars, or imprisoned not more than one year, or both."

[3] The indictment recites, in full: "The Grand Jury charges: That on or about the 24th day of August, 1964, ANTHONY L. FABRIZIO, knowingly did carry in interstate commerce from Keene, State of New Hampshire to Elmira, State of New York, in the Western District of New York, records, papers and writings, to wit: 75 acknowledgements of purchase for a sweepstakes race of the State of New Hampshire, to be used, and adapted, devised and designed for use, in a wagering pool with respect to a sporting event, that is: a sweepstake race of the State of New Hampshire, as he then well knew; all in violation of Section 1953 of Title 18, U. S. C."

[4] In response to the appellee's contention that the indictment failed to state an offense, the Government's bill of particulars stated: "It is claimed by the United States that defendant knowingly carried in interstate commerce in violation of § 1953, T. 18, United States Code, 75 written acknowledgements of purchase of State of New Hampshire First Sweepstakes Race of September, 1964."

As the Court appears to concede, although the language of its opinion is not altogether clear, the appellee could be validly convicted only if he were shown to have participated in an interstate scheme for selling sweepstakes chances to persons outside New Hampshire. But no hint that the appellee was being charged with such activities appears in the indictment or bill of particulars. The charges here fell far short of the established requirement that an indictment must specify the elements of the offense intended to be charged and apprise the defendant of the case that he must be prepared to meet. See *Russell* v. *United States,* 369 U. S. 749, 760–772, and the cases discussed therein. And the Government is not entitled to enlarge the indictment now by revamping the whole theory of the prosecution and making new and additional charges against the appellee for the first time in the course of proceedings before this Court. This Court cannot remedy the deficiencies in the indictment by retroactively reading the Government's new charges into it.

We long ago rejected the notion that "it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes . . . ." *Ex parte Bain,* 121 U. S. 1, 10. See *Stirone* v. *United States,* 361 U. S. 212; *Russell* v. *United States,* 369 U. S. 749, 770–771. As the Court in *Bain* observed, "Any other doctrine would place the rights of the citizen . . . at the mercy or control of the court or prosecuting attorney . . . ." 121 U. S., at 13. The Court's opinion today ignores these established principles, and allows the appellee to be tried for a crime that he was not charged with committing.

For these reasons, I respectfully dissent.