UNITED STATES of America,
Plaintiff-Appellee,

v.

John A. KRAMER, Defendant-Appellant.

No. 82–2024.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1983.

Decided July 5, 1983.

Rehearing Denied Aug. 5, 1983.

Certiorari Denied Nov. 7, 1983.

See 104 S.Ct. 397.

James A. Walrath, Shellow, Shellow & Glynn, Milwaukee, Wis., for defendant-appellant.

Lawrence O. Anderson, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

This appeal from a criminal conviction involves a number of issues, the most interesting of which is whether the warrantless search of people's garbage, put outside their homes for collection, violates any interest protected by the Fourth Amendment.

Defendant was indicted for two counts of drug trafficking (21 U.S.C. §§ 841(a)(1) and 846) and two counts of tax evasion (26 U.S.C. § 7201). The indictment charged that defendant had conspired with unidentified persons to distribute large quantities of marijuana and amphetamines during the years 1977 and 1978, that on one occasion in 1977 defendant had distributed some 1,000 pounds of marijuana, and that defendant had wilfully attempted to avoid paying income taxes owed for the years 1977 and 1978. All four counts were tried together before a jury. Pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, the trial judge acquitted defendant of the tax counts at the close of the government's case, and the jury convicted defendant on both drug counts. The judge denied defendant's post-trial motions, sentenced him to 5 years in prison with a two-year special parole term, and he has appealed. For the reasons that follow, we affirm.

I. *Legality of Seizure of Drug Sales Records*

Among the evidence received at trial were records of marijuana sales by defendant. The records were found among gar-

bage defendant had put by the roadside in front of his house to be collected by a private garbage removal service. The garbage was in plastic trash bags inside plastic garbage containers with plastic tops (Tr. 247–249). Without a warrant to do so, local police investigators picked up the trash bags, transported them to a police station, and searched through their contents on the station floor. Prior to trial, defendant moved to suppress these records, claiming that the garbage pick-ups—the police made three of them—were unlawful under the Fourth Amendment. The judge denied the motion without an evidentiary hearing to determine whether the trash bags were on defendant's property when the police removed them, reasoning that since defendant had not shown (1) that what was in the trash bags "was not really garbage" and (2) "that he had not abandoned the garbage in question" (App. 32–33), defendant's Fourth Amendment rights had not been violated.

■ We agree with the trial judge that the special protection the Fourth Amendment accords people in their "persons, houses, papers, and effects" does not extend to their discarded garbage. *United States v. Terry,* 702 F.2d 299 (2d Cir.1983), certiorari denied, —— U.S. ——, 103 S.Ct. 2095, 77 L.Ed.2d 304; *United States v. Shelby,* 573 F.2d 971, 973 (7th Cir.1978), certiorari denied, 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139. Of course people sometimes do not want others to see things—*e.g.,* magazines, financial records, correspondence, doctor bills—that they sometimes throw away. But people can easily prevent this by destroying what they want to keep secret before they discard it, or by not discarding it. Defendant could have burned or shredded his drug records before he discarded them or kept them hidden somewhere inside his house. The law requires that people travelling in public take care to keep hidden things in their possession they do not want others to see, *United States v. Lee,* 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927), and not to say things they do not want others to overhear, *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and that people who want to keep secret numbers they dial on the telephone not make their phone calls at home, *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). There is nothing unfair about requiring that people not discard things they want to keep secret, or destroy them before they do.

Because of an added feature of this case we do not agree with the trial judge that the inquiry ends there. Defendant alleges that the police trespassed on his land to reach the trash bags. It appears that Judge Warren made no finding where the trash bags were when the police seized them. Defendant's pre-trial motion to suppress the drug sales records was denied without an evidentiary hearing even though defendant alleged in an affidavit in support of that motion that the trash bags were removed from his property. One of the policemen who picked up the garbage bags testified at trial that the bags were located just beyond the perimeter of defendant's property and judging from his ruling on defendant's motion for a new trial, Judge Warren may have credited that testimony as undisputed:

> Any doubts as to the correctness of that [suppression] ruling were dispelled during the offer of proof made by defendant at trial concerning the physical layout of the area from which this garbage was seized. Therefore, the Court rejects defendant's seizure argument.

(Government App. 5.) However, the Government as much as concedes in its brief that this testimony was not undisputed by admitting that in defendant's pretrial affidavit he claimed "that the garbage was taken from an area inside his [perimeter] fence" (Br. 13). Therefore, we must assume that the garbage was on defendant's property when the police removed it.

■ Though one might suppose from the language of the Fourth Amendment that it does not protect people against searches of their lands, the Supreme Court has interpreted it to protect all reasonable, legitimate expectations of privacy, *United States v. Knotts,* —— U.S. ——, 103 S.Ct. 1081, 75

L.Ed.2d 55 (1983); *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and there is no reason, in theory at least, why homeowners cannot have reasonable, legitimate expectations of privacy in their adjacent lands. *United States v. Swart,* 679 F.2d 698 (7th Cir.1982); *United States ex rel. Saiken v. Bensinger,* 546 F.2d 1292 (7th Cir.1976), certiorari denied, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977). Defendant may have had a privacy expectation in the land on which he claims the police trespassed and if he did, then, assuming the trespass invaded that privacy, any evidence recovered from the trash bags should have been suppressed—the police acted on behalf of the state when they conducted the search, and evidence a state obtains in violation of a person's Fourth Amendment rights may not be admitted against that person in a federal criminal trial. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), overruling the often criticized "silver platter" doctrine established in *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914). It does not follow, moreover, that because any expectation of privacy defendant may have had in his garbage was unreasonable, it was constitutionally permissible for the police to trespass on his land to seize his garbage. Defendant's expectation regarding his garbage and his expectation regarding his land are distinct. We do not doubt, for example, that had the police broken into defendant's house and removed the records from a waste paper basket in defendant's bedroom, the records would not be admissible as evidence against him, even if all that was in the waste-paper basket was garbage.

For present purposes, an expectation of privacy is simply an interest protected by the Fourth Amendment. The alleged trespass invaded defendant's privacy if it infringed some interest the Fourth Amendment was intended to protect. The Fourth Amendment protects at least three possible

interests that would have been at stake had the police broken into defendant's house to search for his drug records.* First is defendant's interest in peace and quiet. The Fourth Amendment protects that interest by prohibiting searches that physically disrupt people's households. *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the 4th Amendment is directed * * * "). Police cannot, for example, ransack someone's house, see, *e.g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), or fly a helicopter 20 feet above the roof of his house, see, *e.g., People v. Sneed,* 32 Cal. App.3d 535, 108 Cal.Rptr. 146 (Cal.Ct.App. 1973), to look for evidence of criminal conduct. Second is defendant's interest in relaxation, in retiring someplace, his home, where because what he says and does is not subject to public scrutiny, he can act as he pleases. Many people enjoy stepping off-stage now and then; it gives them a chance to do and say things they might well be too reserved to do and say in public. The Fourth Amendment protects that interest; it keeps people's homes off the public stage by limiting the power of the government to eavesdrop and spy on home lives even when the spying and eavesdropping do not physically disrupt households. *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Dietemann v. Time, Inc.,* 284 F.Supp. 925 (C.D.Cal.1968), affirmed on state grounds, 449 F.2d 245 (9th Cir.1971). Third is defendant's interest in public esteem. Most people know facts about themselves, *i.e.,* habits they have, customs they observe, beliefs they hold, thoughts they think, that they prefer to keep to themselves, not because they would act any differently if the public knew them but because the public might think less well of them if it knew them. By limiting the power of the police to eavesdrop and spy in

---

* The three interests which we describe are not intended to be exhaustive, but they are generally descriptive of the interests which might be at stake on the facts before us.

ways that are not physically intrusive, the Fourth Amendment also protects this interest.

The trespass defendant alleges to have occurred did not infringe any of these interests. Defendant claims, and as noted above we assume, that the police removed Kramer's trash bags from just inside a knee-high chain fence that runs along a street curb some 30 feet from the front of defendant's house. (See Government's Exhibit 102–1–2.) To do so, it was necessary for the police to trespass a few feet upon the outer edge of his front yard either by reaching across the fence into the air space above the yard or by stepping across the fence onto the yard. Neither act was a threat to the peace and quiet of defendant's home. The trespass did not interfere with defendant's enjoyment of his front yard—the police emptied the trash bags at the station, not on defendant's lawn—nor did it interfere with the weekly routine defendant followed to dispose of his garbage—the police unobtrusively picked up the trash bags on the same days defendant's regular garbage collector would have. In fact, defendant did not even discover that the trespass had occurred until the government told him of it some 3½ years later pursuant to its open file policy. Nor was this kind of trespass and seizure a threat to the secrecy of defendant's home life. It did not enable the police to hear or see things in or near defendant's house that they would not have been able to see or hear if they had remained just beyond the fence, which was a single chain of metal suspended some 2 or 3 feet above the ground, not a solid 20-foot wall. Compare, *e.g.*, *State v. Boynton,* 58 Hawaii 530, 574 P.2d 1330 (Haw.1978). The fence may have persuaded passers-by not to wander onto defendant's front lawn, but it certainly did not keep them from observing activities about defendant's house.

■ Defendant does, of course, have a possessory interest in his land, an interest in preventing others from using it, and that interest was infringed by the assumed trespass. But the Fourth Amendment does not protect possessory interests in land. *Rakas*

*v. Illinois,* 439 U.S. 128, 143–144 n. 12, 99 S.Ct. 421, 430–431 n. 12, 58 L.Ed.2d 387 (1978); *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Every trespass, by definition, invades someone's right of possession, but not every government trespass violates the Fourth Amendment. *Hester, supra.* Only those that infringe a privacy interest do; preventing others from using one's land in the circumstances here is certainly not a privacy interest. Therefore the district court's denial of the motion to suppress was proper.

II. *Reasonable Doubt Instruction*

■ We turn now to the remaining issues in this appeal which require less discussion. Defendant claims that he was denied a fair trial because the trial judge forbade his attorney from explaining to the jury during closing argument what the phrase "reasonable doubt" means. It was for the judge, not counsel, to explain the law to the jury. *United States v. Parr-Pla,* 549 F.2d 660 (9th Cir.1977), certiorari denied, 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069. If a jury instruction explaining reasonable doubt should have been given, it was for the court, not counsel, to give it. *United States v. Scales,* 599 F.2d 78 (5th Cir.1979); *United States v. Sawyer,* 443 F.2d 712 (D.C.Cir. 1971). This Court has twice held that a trial judge need not explain to the jury the meaning of the phrase "reasonable doubt," *United States v. Shaffner,* 524 F.2d 1021 (7th Cir.1975), certiorari denied, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976); *United States v. Lawson,* 507 F.2d 433 (7th Cir.1974), certiorari denied, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975); indeed, given the likelihood that any definition will favor one side over the other, we have cautioned against such instructions, *United States v. Regilio,* 669 F.2d 1169 (7th Cir. 1981), certiorari denied, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982), and the criminal instructions adopted for use in this Circuit forbid such an instruction. Federal Criminal Instructions of the Seventh Circuit 2.07, p. 18 (1980). Therefore it was appropriate for the trial judge to refuse to give such an instruction in this case and not

error to forbid defendant's counsel from giving an "instruction" on reasonable doubt during closing argument. Defendant's counsel was not prevented during closing argument from attempting to create a reasonable doubt of guilt by presenting his view of all the evidence; he was simply prevented from giving an "instruction" that the trial judge had previously decided not to give in accordance with our strictures.

### III. *Government's Promises of Consideration to Its Witnesses*

■ Defendant's next contention is that the prosecutor improperly vouched for the credibility of some of the government's witnesses by asking each of them during direct examination if he had promised to testify truthfully in exchange for some form of consideration from the government. Each answered that he had and that he understood that if he did not testify truthfully he could be tried for perjury. Defendant argues that because the prosecutor did not stand up at trial and charge any of the government's witnesses with having breached his promise to testify truthfully, the jury probably thought that the government believed that none of its witnesses had breached his promise and that each had testified truthfully. But the result would have been the same had there been no mention of the promises. Unless the prosecutor had stood up and charged a witness with perjury, the jury would just as probably have thought that the government believed that its witnesses were telling the truth. Mention of the promises did not create the appearance that the government had a greater stake in the honesty of its witnesses. Perhaps the government has a slightly greater interest in charging a witness with perjury when the witness's promise to tell the truth was the consideration for the government's promise to grant immunity—proving perjury might be a prerequisite to rescinding the agreement—but no juror would be inclined to suppose that the difference is enough to make the government any more certain about the credibility of witnesses who make such promises.

### IV. *Prosecutor's Reference to Possible Perjury Charge*

■ Defendant suggests that it was also improper for the government to advise the jury during opening and closing arguments that its witnesses could be tried for perjury if they lied on the stand. Witnesses who testify at criminal proceedings run the risk of being tried and convicted for perjury if they do not tell the truth. That risk is likely to make their testimony more credible, just as the risk of being tried and convicted for, say, theft is likely to make would-be thieves more respectful of others' property. And the likelier it is that the government will try a witness it suspects of lying, the more credible his testimony is likely to be. Consequently it is not improper for the prosecutor to remind the jury of the deterrent effect the threat of a perjury conviction has upon the conduct of government witnesses who to obtain a grant of immunity might otherwise be inclined to lie. It is also appropriate for the prosecutor to indicate his willingness to bring charges against those he suspects of perjury so that the jury may better measure this deterrent effect. *United States v. Israelski,* 597 F.2d 22 (2d Cir.1979); *United States v. Ricco,* 549 F.2d 264 (2d Cir.1977).

### V. *Variance Between Indictment and Proof*

■ Defendant complains of four variances between the indictment and the proof at trial. A variance between allegation and proof is not fatal to a criminal conviction, assuming the proof is of an offense the grand jury intended to charge, unless it affects substantial rights of the accused, Rule 52(a) of the Federal Rules of Criminal Procedure, either by depriving him of an adequate opportunity to prepare a defense or by exposing him to a risk of being prosecuted twice for the same offense. *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Moser,* 509 F.2d 1089 (7th Cir.1975). By this measure, each of the variances claimed was harmless.

The indictment alleged a single conspiracy. Defendant first claims that the evidence at trial was of four different drug conspiracies, each involving defendant and a different cast of co-conspirators. Defendant argues that because the indictment did not name his alleged co-conspirators, it is not possible to tell for which conspiracy he was convicted and whether that conspiracy is the same one. charged in the indictment. It is not critical to this argument whether the government's proof at trial established that defendant was a member of one large conspiracy or several smaller ones. Even were we to hold that the evidence at trial was of one conspiracy, not four, defendant could still make the same claim. Since the indictment does not name defendant's alleged co-conspirators, there would still be no way to tell whether the grand jury and the petit jury believed defendant had conspired with the same persons. And although it would be certain which conspiracy defendant was convicted of, it would still be necessary to examine the complete trial record to determine whether double jeopardy bars any subsequent criminal proceeding. Consequently, the reason for this first variance, assuming it exists, is that the grand jury did not name defendant's co-conspirators.

▇▇▇▇ There is, however, no requirement that a conspiracy indictment identify uncharged co-conspirators. *Rogers v. United States,* 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951); *United States v. Kendall,* 665 F.2d 126 (7th Cir.1981), certiorari denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982); *United States v. Artuso,* 618 F.2d 192 (2d Cir.1980), certiorari denied, 449 U.S. 861, 879; *United States v. Indorato,* 628 F.2d 711, 718 (1st Cir.1980), certiorari denied, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476; *Leverkuhn v. United States,* 297 F.2d 590 (5th Cir.1924). In fact, given the stigma named co-conspirators suffer, it may well be that the grand jury that indicted defendant lacked the power to name his alleged uncharged co-conspirators. *United States v. Chadwick,* 556 F.2d 450 (9th Cir.1977); *United States v. Briggs,* 514 F.2d 794 (5th Cir.1975). True, there is language in the plurality opinion in *Russell, infra,* 369 U.S. at 770–771, 82 S.Ct. at 1050–1051, to the effect that a defendant cannot "be convicted on the basis of facts not found by * * * the grand jury which indicted him," and when the indictment does not name the accused's alleged co-conspirators, there is generally no way to be certain that the conspiracy found by the grand jury has the same members as the one found by the petit jury. But decisions following *Russell* establish that this rule is a limitation not on the power of courts to hear evidence, but on their power to amend indictments, either in form or effect. The rule applies only when the fact in question is a material element of the offense charged, as it was in *Russell. Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Fabrizio,* 385 U.S. 263, 271, 87 S.Ct. 457, 462, 17 L.Ed.2d 351 (1966); *United States v. CINA,* 699 F.2d 853 (7th Cir.1983). A criminal defendant can cure any uncertainty he has about the factual setting for the charged criminal conduct by requesting a bill of particulars. *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). Here, defendant need not even have done that; because of the government's "open file" policy, all relevant evidence in the government's possession was available to him. There is no requirement that persons not charged with criminal conduct suffer the stigma of being named co-conspirators in an indictment just so that defense attorneys can avoid the inconvenience of discovery. And here there is no danger that because the indictment did not name defendant's alleged co-conspirators, he might be re-prosecuted for the same offense. The entire record in this proceeding is admissible in any subsequent criminal proceeding to prove that defendant has already been prosecuted for the same offense. *Russell v. United States,* 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *Bartell v. United States,* 227 U.S. 427, 433, 33 S.Ct. 383, 384, 57 L.Ed. 583 (1913); *United States v. Haas,* 583 F.2d 216, 221 (5th Cir.1978), certiorari denied, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240

(1979); *United States v. Covington,* 411 F.2d 1087 (4th Cir.1969).

■■■ Defendant's second claim concerns the trial judge's instruction to the jury that it could find defendant guilty of the conspiracy charged in Count I of the indictment if it found that he had conspired to distribute or possess with intent to distribute "marijuana or amphetamines, or both." (Tr. 2289). Defendant claims that because Count I charges him with conspiring to "possess with intent to distribute and distribute marijuana, * * * *and* amphetamines" (emphasis supplied), the government was required to prove that the conspiracy involved both drugs. Although a defendant may not be charged with alternative offenses in the same count of an indictment, *Confiscation Cases,* 87 U.S. 92, 98; *United States v. Donovan,* 339 F.2d 404, 407–408 (7th Cir.1964), he may be charged with alternative commissions of the same offense. Rule 7 of the Federal Rules of Criminal Procedure specifically provides that "[i]t may be alleged in a single count * * * that [the defendant] committed [the offense] by one or more specified means." The Advisory Committee Note to this provision explains that it was "intended to eliminate the use of multiple counts for the purpose of alleging the commission of the offense by different means or in different ways." A single conspiracy to commit different drug offenses is a single criminal offense, *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); since a defendant cannot be sentenced twice for the same offense, charging defendant in two counts for what were different objectives of the same conspiracy would have been improper. *United States v. Mazzochi,* 75 F.2d 497 (2d Cir.1935). The only question then is whether the word "and" in the phrase "marijuana * * * and amphetamines" in Count I of the indictment may be read to mean "or," whether, that is, a defendant charged with committing a single offense by doing A and B, each a different means of committing the offense, may be convicted if the jury finds that he did either A or B. The Supreme Court long ago held that a defendant may be convicted in that circumstance,

*Crain v. United States,* 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896), and that remains the rule. *United States v. Conti,* 361 F.2d 153 (2d Cir.1966), vacated on other grounds, 390 U.S. 204. Even were that not the rule, defendant would not be able to show that he was prejudiced by the trial judge's reading of Count I. Defendant knew of that reading before his trial began (R. 39), and if the grand jury thought the evidence before it sufficient to charge defendant with a conspiracy involving two drugs, *a fortiori* it must have thought that evidence sufficient to find a conspiracy involving one of those drugs.

■■■ Defendant's third and fourth claims of variance go to the accuracy of certain facts alleged in the indictment. Count II charged that defendant committed the offense therein described "on or about September 20, 1977 at Burlington," a small town in Eastern Wisconsin. In fact, the evidence at trial indicated that the offense occurred a few weeks later at a neighboring town. There was also some evidence at trial that the drug involved in the conspiracy was "methamphetamines," not "amphetamines" as alleged in Count I. These variances were plainly harmless. See *Ledbetter v. United States,* 170 U.S. 606; *United States v. CINA,* 699 F.2d 853 (7th Cir. 1983); *United States v. Moser,* 509 F.2d 1089 (7th Cir.1975).

## VI. *The Pre-Sentence Reports and IRS Notes*

■■■ Defendant claims he was improperly denied access to two pre-sentence reports containing statements two government witnesses made to their probation officers and to notes an IRS agent prepared of an interview with a government witness. The trial judge reviewed these materials *in camera* and refused to order their release on the ground that none of the information they contained was helpful to defendant. We have examined those materials also and we agree with the trial judge that none of the information in them could possibly have affected the outcome of defendant's trial.

*United States v. Cyphers,* 553 F.2d 1064 (7th Cir.1977).

Defendant's remaining arguments do not merit discussion. Judgment of conviction affirmed.