Filed 8/21/20  P. v. Sullivan CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICAH BENJAMIN SULLIVAN,<br><br>    Defendant and Appellant. | H044277<br>(Monterey County<br> Super. Ct. No. SS160904) |

A jury convicted defendant Micah Benjamin Sullivan of robbery relating to a purse-snatching incident.  He argues his conviction must be reversed because the trial court erred when it sustained an objection to a closing argument of defense counsel about the prosecution's burden of proof.  We find any error related to defendant's trial harmless.  However, after inviting supplemental briefing regarding defendant's entitlement to consideration for mental health diversion under Penal Code section 1001.36, we will conditionally reverse the judgment and remand the matter to the trial court with directions to conduct a diversion eligibility hearing.

Defendant's appellate counsel also filed a petition for writ of habeas corpus alleging ineffective assistance of trial counsel, and a supplemental petition for writ of habeas corpus seeking remand for a mental health diversion eligibility hearing.  We dispose of those petitions by separate order filed this day.  (See Cal. Rules of Court, rule 8.387(b)(2)(B).)

# I.   TRIAL COURT PROCEEDINGS

Defendant was charged with a single count of robbery (Pen. Code, § 211). According to testimony at trial, a woman was walking in Salinas after dropping off her car for an oil change when she noticed a man (whom she identified as defendant) walking toward her on the sidewalk.  He appeared to be "arguing with someone [who] wasn't there."  As he came closer, the woman heard him yell something like:  " 'Leave me alone or I'll have to hurt someone like this nice woman.' "  The woman became concerned, but decided to walk past.  Immediately after passing him, the woman felt a tug on her purse and turned to see defendant grabbing the strap.  A struggle ensued over the purse, described by the woman as a tug of war.  Defendant was stronger than the woman and she was being pulled toward him.  Defendant fell down but maintained his grip on the purse.  The woman eventually let go because she was afraid he might have a weapon. Defendant fled, and the woman screamed for help.  Multiple people called 911 to report the crime, and recordings of those calls were admitted into evidence and played for the jury.

A bystander testified to seeing a scuffle on the sidewalk between a man and a woman as he drove past.  He saw the man and woman both fall down and then the man (whom he also identified at trial as defendant) got up and ran away with a purse.  The bystander drove after defendant and blocked his path with the car.  He told defendant to give him the purse and defendant complied.  When he asked defendant why he took the purse defendant responded " 'I'm sick, I'm sick.' "

A police officer who responded to the 911 calls testified that he got out of his patrol car, approached defendant, and asked him if he had been involved in an incident involving a woman.  Defendant initially denied any involvement, then told the officer he had found the purse on the ground.  Defendant eventually admitted he took the purse from the woman and stated that he took full responsibility for his actions, which he blamed on his heroin addiction.  The officer testified that defendant was calm,

2

cooperative, coherent, and appeared to understand all of the officer's questions. Defendant did not appear to be under the influence of any controlled substance. The officer arrested defendant and advised him of his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436.) While en route to the police station, defendant volunteered (without questioning by the officer) that he was glad he had been arrested because it meant he could seek treatment for his heroin addiction. He also asked the officer to apologize to the victim on his behalf and expressed hope that he did not hurt her.

Relevant to this appeal, the prosecution and defense each discussed the reasonable doubt standard during closing argument. The prosecutor argued: "when thinking about reasonable doubt, the key word there is 'reasonable.' And it's helpful to think about what ... reasonable doubt is not. It's not beyond all pcossible doubt. It's not beyond all imaginary doubt. And it's not to an absolute certainty. [¶] It's what's reasonable. What's reasonable given all the evidence. What's reasonable given everything that you know. And what's reasonable employing your common sense."

Defense counsel argued: "You need to make sure the decision you made today is an abiding conviction. ... That you don't have second guesses. That you don't regret the decision you made today. [¶] ... [¶] Now, the standard of proof in this country in a criminal setting is beyond a reasonable doubt. That's the highest standard in any arena in a court in America. [¶] To take your children away ... requires a standard of clear and convincing evidence. To take your children away, it requires a lesser standard of clear and convincing evidence." The trial court sustained an objection by the prosecutor and admonished the jury: "Ladies and gentlemen of the jury, I'm going to instruct you to disregard the last comments relating to children and the standard of law. That's stricken from the record." Defense counsel continued to address the reasonable doubt standard, arguing "[i]f one of you thinks it's an issue, that's a reasonable doubt. That's enough for you to consider and say 'there is doubt here.' "

3

The jury found defendant guilty of robbery, and he was sentenced to the low term of two years in prison.

## II. DISCUSSION

### A. CLOSING ARGUMENT

Defendant argues the trial court abused its discretion and violated his federal constitutional right to counsel by sustaining the objection to defense counsel's argument about the clear and convincing evidence standard.

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (Pen. Code, § 1044.) The total denial of the opportunity for defense counsel to provide closing argument is a violation of the U.S. Constitution's Sixth Amendment. (*Herring v. New York* (1975) 422 U.S. 853, 858–860.) But trial courts retain "great latitude in controlling the duration and limiting the scope" of closing argument. (*Id.* at p. 862.) And the constitutional right to counsel " 'is not infringed when "the opportunity [of the defense] to participate fully and fairly in the adversary factfinding process" [citation] is not significantly limited.' " (*People v. Memro* (1995) 11 Cal.4th 786, 876.)

Defendant has not demonstrated that the trial court's decision to sustain one objection during closing argument significantly limited counsel's ability to participate fully and fairly in the adversary process. Defense counsel was allowed to describe the applicable standard of proof both before and after the trial court sustained the objection at issue here. And the trial court did not deter counsel from the main defense argument that the evidence was insufficient to support the force and specific intent elements of robbery. We therefore find no federal constitutional violation.

As for defendant's state law claim, we review a trial court's exercise of its authority to control proceedings under Penal Code section 1044 for abuse of discretion,

4

and we review error in that exercise under the state law standard for prejudice: whether it is reasonably probable that defendant would have obtained a more favorable result had the error not occurred. (*People v. Chenault* (2014) 227 Cal.App.4th 1503, 1521.) Defendant acknowledges that " 'it [is] for the judge, not counsel, to explain the law to the jury.' " (Quoting *U.S. v. Kramer* (7th Cir. 1983) 711 F.2d 789, 794 [finding no violation of the due process right to a fair trial where the trial judge forbade defense counsel from defining reasonable doubt for the jury].) Defendant argues the prosecutor's description of the reasonable doubt standard was misleading and required clarification from defense counsel. But the trial court instructed on the reasonable doubt standard and also properly instructed—both before closing argument and with multiple admonitions during argument—that the jurors were to follow the law as the court described it even if the attorneys' comments conflicted with the court's instructions. (See CALCRIM No. 200.) Though defendant notes "the jury was not instructed on the law again" after closing argument, there is no evidence the jurors lacked access during deliberations to a paper copy of the instructions given. We presume the jury acted reasonably and followed the court's instructions. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1014.) Having properly instructed the jury on reasonable doubt with CALCRIM No. 220, the trial court could rationally view counsel's comparison of that standard to the inapplicable clear and convincing evidence standard as potentially confusing to the jury. We acknowledge, however, that defense counsel's argument could also be viewed as a fair response to the prosecutor's characterization of reasonable doubt as "[w]hat's reasonable given all of the evidence."

We need not conclusively determine whether the trial court abused its discretion in sustaining the objection because on this record the error would be harmless. The victim's testimony about defendant pulling on the purse strap hard enough that she was pulled toward him is sufficient evidence of force necessary to convict defendant of robbery. Defendant's flight once the woman let go of her purse is sufficient circumstantial

5

evidence of defendant's specific intent to permanently deprive her of her property. Though defendant argues the asserted error would be prejudicial because his intent was a material fact in dispute (based on the possibility that a mental disorder affected his ability to form a specific intent), his coherence when talking to the officer soon after the incident, as well as his request that the officer apologize to the victim, is strong circumstantial evidence that his ability to form a specific intent had not been overcome by a mental disease, defect, or disorder. Defendant has not shown a reasonable probability of a more favorable verdict had the jury been allowed to consider counsel's argument comparing the reasonable doubt standard to the clear and convincing evidence standard.

### B. MENTAL HEALTH DIVERSION (PEN. CODE, § 1001.36)

After reviewing the parties' arguments in the related habeas matter (case No. H045613), we sought supplemental briefing regarding defendant's entitlement to a mental health diversion eligibility hearing under Penal Code section 1001.36. Penal Code section 1001.36 allows for pretrial diversion for individuals diagnosed with qualifying mental disorders including, among other things, schizophrenia. To qualify for diversion, a court must find that a defendant meets six criteria: the defendant suffers from a qualifying mental disorder; the disorder played a significant role in the commission of the charged offense; a qualified expert has opined that the defendant's symptoms are treatable; the defendant has consented to diversion and has waived his or her right to a speedy trial; the defendant agrees to treatment as a condition of diversion; and the defendant does not pose an unreasonable risk of danger to public safety. (Pen. Code, § 1001.36, subd. (b)(1)(A)–(b)(1)(F).)

In *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), the Supreme Court considered whether the mental health diversion statute applies retroactively to cases in which the judgment is not yet final under the reasoning of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), and whether the proper remedy for a non-final judgment pending on appeal is

6

to conditionally reverse the judgment and remand the matter for a diversion hearing. The Supreme Court concluded that *Estrada* applies to Penal Code section 1001.36, and affirmed the appellate court's "determination that defendant is entitled to a limited remand for the trial court to decide whether he should receive diversion under [Penal Code] section 1001.36." (*Frahs*, at p. 625.)

The Attorney General argues that defendant is not entitled to a remand under Penal Code section 1001.36 "[b]ecause there is no evidence appellant suffered from a qualifying mental disorder." But we find adequate evidence in the record to suggest that defendant was suffering from a mental disorder when he committed the robbery. The victim testified that defendant appeared to be arguing with someone who was not there and that he yelled: " 'Leave me alone or I'll have to hurt someone like this nice woman.' " Indeed, there was enough evidence that the trial court instructed the jury with CALCRIM No. 3428 regarding the effect of a mental disease, defect, or disorder on the defendant's ability to form the requisite intent or mental state.

Though it appears from the record that defendant is no longer in custody, we note that this issue is not moot because defendant can still obtain relief. He is entitled to a determination of his eligibility for mental health diversion. If found eligible, in addition to access to mental health services, the charge in this case could eventually be dismissed upon satisfactory completion of diversion. (See Pen. Code, § 1001.36, subd. (e) ["If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion."].) We will therefore conditionally reverse the judgment and remand for a mental health diversion eligibility hearing.

### III.   DISPOSITION

The judgment is conditionally reversed and the matter is remanded with instructions to conduct a mental health diversion eligibility hearing (Pen. Code,

7

§ 1001.36). If the trial court finds that defendant suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), the court may grant diversion. If defendant successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that defendant does not meet the criteria under Penal Code section 1001.36, or if defendant does not successfully complete diversion, then the conviction and sentence shall be reinstated.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H044277 -** *The People v. Sullivan*